## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| 1199SEIU UNITED | ) | |
| HEALTHCARE WORKERS EAST, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | No. 1:20-cv-24069-RNS |
|     v. | ) | |
| | ) | |
| LOUIS DEJOY, Postmaster | ) | |
| General and Chief Executive | ) | |
| Officer of the United States Postal | ) | |
| Service; and the UNITED STATES | ) | |
| POSTAL SERVICE, | ) | |
| | ) | |
|     Defendants. | ) | |

## PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT THEREOF

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ........................................................................................................ 2

FACTUAL BACKGROUND ...................................................................................... 4

    A.    USPS made major operational changes in the midst of a pandemic that continue to harm mail delivery in Florida. ............................................. 4

    B.    Some Florida postal managers have instituted protocols to minimize the number of late-delivered ballots, but USPS has failed to institute such measures across Florida counties. .................................................. 6

ARGUMENT ............................................................................................................... 7

I.    Five Federal District Courts Have Granted Analogous Injunctive Relief On Similar Facts. ....................................................................................... 8

II.    Plaintiff Has A Substantial Likelihood Of Success On The Merits. ............... 11

    A.    Plaintiff Will Likely Succeed On Its 39 U.S.C. § 3661 Claim .............. 11

    B.    Plaintiff Will Likely Succeed On Its Right-to-Vote Claim ................... 13

    C.    Plaintiff Will Likely Succeed On Its Equal Protection Claim. ............. 16

III.    Absent An Injunction, Plaintiff's Members, And All Florida Voters, Will Suffer Irreparable Harm to Their Fundamental Right to Vote. ............................... 18

IV.    The Equities And The Public Interest Favor Injunctive Relief. .................... 19

CONCLUSION ........................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Charters, Inc. v. Bronson,*
   591 F.Supp.2d 1272 (S.D. Fla. 2008) .................................................................. 18

*Anderson v. Celebrezze,*
   460 U.S. 780 (1983) ............................................................................... 13, 14

*Buchanan v. U.S. Postal Service,*
   508 F.2d 259 (5th Cir. 1975) ............................................................. 12, 13, 19

*Buckley v. Valeo,*
   424 U.S. 1 (1976) ....................................................................................... 17

*Burdick v. Takushi,*
   504 U.S. 428 (1992) ............................................................................... 13, 14

*Bush v. Gore,*
   531 U.S. 98 (2000) ................................................................................. 16, 17

*Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd.,*
   112 F.3d 1125 (11th Cir.1997) ................................................................ 8, 15

*Charles H. Wesley Educ. Foundation, Inc. v. Cox,*
   408 F.3d 1349 (11th Cir. 2005) ....................................................................... 8

*Cipriano v. City of Houma,*
   395 U.S. 701 (1969) ...................................................................................... 13

*City of South Miami v. Desantis,*
   408 F.Supp.3d 1266 (S.D. Fla. 2019) .............................................................. 11

*Crawford v. Marion Cty. Election Bd.,*
   553 U.S. 181 (2008) ...................................................................................... 14

*Democratic Executive Committee of Florida v. Lee,*
   915 F.3d 1312 (11th Cir. 2019) ................................................................ 14, 16

*Evans v. Cornman,*
   398 U.S. 419 (1970) ...................................................................................... 13

*Fla. Democratic Party v. Scott,*
   215 F.Supp.3d 1250 (M.D. Fla. 2016) ............................................................. 19

*Frank v. Walker*,
    819 F.3d 384 (7th Cir. 2016) ................................................................................. 15

*Ga. Coal. For People's Agenda, Inc. v. Kemp*,
    347 F.Supp.3d 1251 (N.D. Ga. 2018) ............................................................. 15, 19

*Gallagher v. N.Y. State Bd. of Elections*,
    No. 20-cv-5504, 2020 WL 4496849 (S.D.N.Y. Aug. 3, 2020) ................................. 17

*Gulf Coast Mar. Supply, Inc. v. United States*,
    218 F.Supp.3d 92 (D.D.C. 2016) ......................................................................... 20

*Harper v. Va. State Bd. of Elections*,
    383 U.S. 663 (1966) ........................................................................................... 16

*Kramer v. Union Free Sch. Dist. No. 15*,
    395 U.S. 621 (1969) ........................................................................................... 13

*League of Women Voters of Ohio v. Brunner*,
    548 F.3d 463 (6th Cir.2008) ............................................................................... 17

*League of Women Voters of Fla., Inc. v. Detzner*,
    314 F.Supp.3d 1205 (N.D. Fla. 2018) ................................................................. 18

*League of Women Voters of N.C. v. North Carolina*,
    769 F.3d 224 (4th Cir. 2014) ........................................................................ 14, 18

*Martin v. Kemp*,
    341 F.Supp.3d 1326 (N.D. Ga. 2018) ................................................................. 15

*Mondaire Jones et al. v. United States Postal Service et al.*,
    No. 20-CV-6516, 2020 WL 5627002 (S.D.N.Y. Sept. 21, 2020) ..................... *passim*

*Ne. Ohio Coal. for Homeless v. Husted*,
    696 F.3d 580 (6th Cir. 2012) .............................................................................. 15

*New York v. Trump*,
    1:20 Civ. 2340, 2020 WL 5763775 (D.D.C. Sept. 27, 2020) ......................... 8, 9, 13

*Obama for Am. v. Husted*,
    697 F.3d 423 (6th Cir. 2012) ......................................................................... 18, 20

*Pennsylvania v. DeJoy*,
    2:20 Civ. 4096, 2020 WL 5763553 (E.D. Pa. Sept. 28, 2020) ...................... 8, 9, 13

*Reynolds v. Sims*,
    377 U.S. 533 (1964) ...................................................................................... 16, 17

*Schiavo ex rel. Schindler v. Schiavo,*
    403 F.3d 1223 (11th Cir. 2005) ............................................................................ 11

*State of Washington, et al. v. Trump, et al.,*
    No. 1:20-CV-03127, 2020 WL 5568557 (E.D. Wash. Sept. 17, 2020)...... 8, 9, 10, 13

*Tashjian v. Republican Party of Conn.,*
    479 U.S. 208 (1986) ............................................................................................. 18

*Touchston v. McDermott,*
    234 F.3d 1133 (11th Cir. 2000) ............................................................................ 18

*Vote Forward et al. v. DeJoy et al.,*
    No. 20-2405 (EGS), 2020 WL 5763869 (D.D.C. Sept. 28, 2020) .................. 8, 9, 16

*Wesberry v. Sanders,*
    376 U.S. 1 (1964) ................................................................................................. 18

*Williams v. Rhodes,*
    393 U.S. 23 (1968) ............................................................................................... 13

*Yick Wo v. Hopkins,*
    118 U.S. 356 (1886) ............................................................................................. 18

**Statutes**

5 U.S.C. §§ 556–57 ...................................................................................................... 11, 12

39 U.S.C. § 3661..........................................................................................................*passim*

Fla. Stat. § 101.62 ............................................................................................................ 1

Fla. Stat. § 101.6103........................................................................................................ 1

Plaintiff 1199SEIU United Healthcare Workers East, hereby moves this Court *on an emergency basis*, pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Rule 7.1(d), for entry of a preliminary injunction against Defendants Louis DeJoy, Postmaster General and Chief Executive Officer of the United States Postal Service, and the United States Postal Service ("USPS") *by no later than October 23, 2020*. The relief requested is necessary in order to restore a status quo, which existed prior to Defendants' illegal conduct, in which voters could rely upon USPS to deliver their ballots without undue delays. It is also necessary to protect the First and Fifth Amendment rights of Plaintiff and its members.

Plaintiff's Emergency Motion for Preliminary Injunction must be heard on an emergency basis, and ruled upon immediately, to avoid disenfranchisement of tens of thousands of voters in the upcoming November 3 election, due to potential delays caused by USPS. Emergency relief within seven days is warranted here because:

(1) The deadline for Florida voters to request a vote-by-mail ballot is on October 24, 2020—eight days from the date of the filing of this Motion;[1]

(2) election supervisors must mail vote-by-mail ballots to voters requesting them by October 26, 2020—ten days from the filing of this Motion;[2]

(3) most critically, all vote-by-mail ballots must be *received* by the supervisor of elections no later than 7:00 p.m. on the day of the election, November 3, 2020—eighteen days from the date of the filing of this Motion;[3] and

(4) absent relief, Plaintiff's members, and voters, will not know if they can rely upon the mail in deciding whether to request and mail in their ballots.

---

[1] "A request for a vote-by-mail ballot to be mailed to a voter must be received no later than 5 p.m. on the 10th day before the election by the supervisor." § 101.62(2), Fla. Stat.

[2] "The supervisor shall mail vote-by-mail ballots to voters requesting ballots by such deadline no later than 8 days before the election." *Id.*

[3] § 101.6103(4)(c), Fla. Stat.

## **INTRODUCTION**

This motion for preliminary injunction seeks to ensure that tens of thousands of voters are not disenfranchised by recent illegal changes in the operations of the United States Postal Service ("USPS"). Five other federal district courts have issued preliminary injunctions compelling USPS to take steps to restore the status quo, in which ballots were timely and reliably delivered to election officials. This motion seeks similar relief tailored to the unique laws and circumstances of Florida. Floridians have a tremendous interest in voting by mail—over 5.6 million of them have already requested mail-in ballots. And Florida law makes it essential that those ballots are delivered on time: under state law, ballots not received by 7:00 p.m. on Election Day are not counted, even if they were postmarked well before that deadline.

As set forth below, USPS officials in two major counties in Florida, Palm Beach County and Broward County, have already agreed to the modest ballot delivery procedures sought in this motion. However, the USPS has not agreed to follow these reasonable procedures or their functional equivalents in other counties. Absent a preliminary injunction compelling compliance with the reasonable procedures in all Florida counties, there is a substantial likelihood that tens of thousands of voters—who voted and timely mailed their ballots—will be disenfranchised.

This case and motion is brought by 1199SEIU United Healthcare Workers East, which represents the interests of the healthcare workers in Florida. Like other citizens, its members should not be forced to risk spreading or contracting the coronavirus at a polling place or other central location by voting in person. They, like all voters, should be able to rely upon USPS to timely deliver their ballots by mail.

Beyond healthcare workers, the relief sought is necessary to protect the constitutional rights of all Florida voters, without regard to political affiliations.

An injunction is required because of a substantial likelihood of large-scale disenfranchisement through postal delivery delays, caused by illegal changes made to USPS by Postmaster General, Louis DeJoy, starting in approximately July 2020. These illegal changes included the removal of approximately 59 high-speed sorting machines from Florida—more machines than were removed from any other state other than California. Five different federal district courts have already found a sufficient probability of success on the merits on claims related to the illegality of Mr. DeJoy's unilateral actions. Each of those courts issued preliminary injunctions compelling USPS to restore service levels to meet historic standards. USPS has not appealed or sought to stay those injunctions, which are binding nationwide.

The existing injunctions, however, have been insufficient to address circumstances in Florida. USPS's service levels in Florida have not been restored to the status quo before DeJoy's illegal changes. With an elderly population, millions of Floridians will vote by mail. Critically, Florida law disqualifies ballots received by election officials after 7:00 p.m. on Election Day, even if postmarked days earlier.

USPS officials in both Ft. Lauderdale and Palm Beach are taking reasonable measures to counter Defendant DeJoy's illegal changes, including by working with election officials to arrange for specialized and extra deliveries in the days leading up to and including Election Day. As these USPS officials recognized, these procedures are not unduly burdensome. The agreed procedures primarily require a) the

prioritization of ballots over other mail; b) direct routing of ballots to an agreed-upon post office located physically proximate to each county election office; c) clearly communicating to election officials about when election officials can take custody of ballots from that proximate post office; and d) "sweeping" postal facilities for ballots, including on Election Day.  In short, there will be no hardship to USPS from the requested injunctive relief.

For the reasons set forth below, this motion presents a paradigm case for preliminary injunctive relief.

## FACTUAL BACKGROUND[4]

### A.    USPS made major operational changes in the midst of a pandemic that continue to harm mail delivery in Florida.

By July 2020, Defendant DeJoy and USPS had made unilateral and illegal reductions in postal infrastructure, including the removal of 59 high speed sorting machines in the state of Florida.  (Ex. A, Declaration of David Bradford, "Bradford Decl.," Ex. A-1, ¶ 12.)  Following these changes, USPS informed Florida election officials that, given changes in postal operations, Florida's statutory 10-day pre-election cutoff for requesting absentee ballots—and its 8-day deadline for election supervisors to mail out blank absentee ballots—created a "significant risk that the voter will not have sufficient time to complete and mail the completed ballot back to election officials in time for it to arrive by the state's return deadline."  (Bradford

---

[4] This motion is supported by the Declarations of Daniel A. Smith, Professor and Chair of Political Science at the University of Florida (Ex. B) and Dale Ewart, Executive Vice President and the Florida Regional Director for 1199SEIU United Healthcare Workers East (Ex. C), as well as an attorney declaration verifying certain supporting exhibits (Ex. A).

Decl., Ex. A-2.)  These reductions in service were made in the middle of a pandemic which had already resulted in unprecedented voting by mail and unacceptable delays in ballot delivery:

- According to a study conducted by the Stanford-MIT Healthy Elections Project, during Florida's March 17, 2020 presidential primary, Florida rejected 18,504 vote-by-mail ("VBM") ballots—1.34% of all VBM ballots cast.  The study notes that late delivery was a "major cause" of their disqualification. (Bradford Decl., Ex. A-3 at 15.)

- The problem grew worse during Florida's August 18, 2020 primary election. According to reporting, more than 35,500 VBM ballots were rejected, amounting to 1.5% of the total vote.  Of those rejected, nearly 66% were disqualified because they were late.  (Bradford Decl., Ex. A-4.)

- Absentee ballot rejections were not evenly or proportionately distributed across the state. A single county—Miami-Dade—accounted for close to one quarter of tossed VBM ballots statewide, most of which were received after the deadline or without a signature. (Bradford Decl., Ex. A-4.)

- In the same primary, almost 1,300 VBM ballots were not delivered in time to be counted in Volusia County—more than double that of the 2018 and 2016 primaries. (Bradford Decl., Ex. A-5.)

- In addition, during the same August 2020 primary, news reporting noted the following:  (a) roughly 700 Manatee County primary VBM ballots were not counted because they arrived after the 7:00 p.m. deadline; (b) Sarasota County had 574 VBM ballots that arrived after the primary deadline and were not counted; (c) Orange County received 1,299 VBM ballots late, including 114 that were postmarked before election day; (d) Lake County officials estimated there were 500 to 600 VBM ballots received after the deadline; and (e) in Flagler County, where 27,073 primary ballots were cast, 79 VBM ballots arrived late. (Bradford Decl., Exs. A-6–A-8.)

There is a substantial likelihood that, on its present course, the USPS will be unable to ensure the timely delivery of the exceptionally high volume of election mail in Florida for the November 3 vote.  Indeed, as of October 14, 2020, with ten days left to request ballots, over 5.7 million VBM ballots have been requested by Florida voters, a 60% increase in the demand for VBM ballots compared to the entire 2016

5

General Election.  (Ex. B, Declaration of Daniel A. Smith, "Smith Decl." at ¶ 9.) Roughly two-thirds of those ballots have not been received.  (Smith Decl. at ¶ 11.) The considerable variation geographically in the return of VBM ballots is at least partly attributable to delays in voters receiving their ballots.  (Smith Decl. at ¶ 12.) Additionally, approximately 52,000 mailed ballots have been returned as "undeliverable" and over 10,000 additional ballots have been invalidated for voter error; for these voters, additional steps will need to be taken in the waning days of the election cycle in order to be counted.  (Smith Decl. at ¶¶ 14-16.)  The number of ballots that arrived on Election Day, or the day before, in the 2020 Presidential Preference Primary and August 2020 primary, demonstrate that just a small delay in the mail delivery of these ballots could cost tens of thousands of eligible voters their vote.  (Smith Decl. at ¶ 21.)  Indeed, even after five nationwide injunctions have been entered, USPS's on-time delivery rates for First Class mail in Florida remain woefully below expectations and historic performance, sinking to 84.4% in South Florida, 88.4% in Florida's Suncoast, and 82.6% in the Gulf Atlantic, as of the week of September 26, the most recent available data.  (Bradford Decl., Ex. A-9 at 40, 44, 45.) The failure of USPS to institute state-wide protocols will disenfranchise Plaintiff's members, and others, in the upcoming election.  (*See generally*, Ex. C, Declaration of Dale Ewart.)

### B. Some Florida postal managers have instituted protocols to minimize the number of late-delivered ballots, but USPS has failed to institute such measures across Florida counties.

On September 21, 2020, after negotiating with Broward County election officials regarding concerns over the timely delivery of election mail, the Ft.

Lauderdale Postmaster committed to instituting additional steps to mitigate delivery delays for mail ballots, including arranging for specialized times for county officials to retrieve, and for USPS to deliver, ballots in the days leading up to and including Election Day. (Bradford Decl., Ex. A-10.) On October 8, 2020, a Manager in USPS's South Florida district made similar commitments to election officials in Palm Beach County. (Bradford Decl., Ex. A-11.)

On October 12, 2020, Plaintiff requested that USPS commit to various protocols adopted by USPS officials in Ft. Lauderdale and Palm Beach counties related to the handling of election mail. (Bradford Decl., ¶ 26 and Ex. A-12.) Through counsel, Plaintiff has discussed the requested relief with USPS. (Bradford Decl. ¶ 26.) To date, USPS has not agreed to this request. (Bradford Decl. ¶ 26.)

## ARGUMENT

A preliminary injunction should issue because Plaintiff's members, and all Florida voters, will be irreparably injured if deprived of their fundamental constitutional right to vote in the November election. To grant a motion for a preliminary injunction, the moving party must show that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause to the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Charles H. Wesley Educ. Foundation, Inc. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005). The decision to grant or deny a preliminary injunction is within the discretion of the district court. *Carillon*

*Importers, Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir.1997). Each element is established here.

## I.     Five Federal District Courts Have Granted Analogous Injunctive Relief On Similar Facts.

Five other federal district courts have already issued preliminary injunctions[5] compelling USPS to take affirmative steps to restore the status quo and prioritize the timely delivery of election mail. *See State of Washington, et al. v. Trump, et al.*, No. 1:20-CV-03127-SAB, 2020 WL 5568557 (E.D. Wash. Sept. 17, 2020); *Mondaire Jones et al. v. United States Postal Service et al.*, No. 20-CV-6516, 2020 WL 5627002 (S.D.N.Y. Sept. 21, 2020); *Pennsylvania v. DeJoy*, 2:20 Civ. 4096, 2020 WL 5763553 (E.D. Pa. Sept. 28, 2020); *New York v. Trump*, 1:20 Civ. 2340, 2020 WL 5763775 (D.D.C. Sept. 27, 2020); *Vote Forward et al. v. DeJoy et al.*, No. 20-2405 (EGS), 2020 WL 5763869 (D.D.C. Sept. 28, 2020).  Specifically, these courts found that the Postal Service violated the law in adopting the raft of policy changes that led to widespread delays in mail deliveries, and that these changes directly jeopardized the timely delivery of ballots in the upcoming November election.  *Id.*

In finding likelihood of success on the merits, three of the five federal courts held it likely that the Postal Service violated 39 U.S.C. § 3661(b) because, in the words of one court, "Defendants were required to seek an advisory opinion from the Commission under section 3661(b) and acted *ultra vires* by failing to do so." *Pennsylvania*, 2020 WL 5763553, at \*39; *accord New York*, 2020 WL 5763775, at \*9;

---

[5] For the Court's convenience, all five orders are provided for reference and consideration. (*See* Bradford Decl., Exs. A-13–A-17.)

*Washington*, 2020 WL 5568557, at *4–5. These decisions recognized the violation jeopardized election mail. *See, e.g.*, *Washington*, 2020 WL 5568557, at *4 ("[A]t the heart of DeJoy's and the [USPS's] actions is voter disenfranchisement.")[6]

In both *Jones* and *Vote Forward*, the courts found a likely violation of the right to vote because "the potential for voter disenfranchisement is immense" and the Postal Service's actions "caused and will continue to cause inconsistency and delays in the delivery of mail. . . placing at particular risk voters residing in [the] states that require mail ballots to be received, not just post-marked, by Election Day." *Vote Forward*, 2020 WL 5763869, at *8; *accord Jones*, 2020 WL 5627002, at *22–23. In *Jones*, the court also found a likely violation of equal protection because of "a profound and troubling lack of standards and uniformity with regard to USPS's handling of Election Mail" that "will result in intrastate and interstate disparities in citizens' voting power." *Jones*, 2020 WL 4527002, at *22-23.

All five courts had no trouble determining that USPS's actions caused irreparable harm and that the equities tipped decisively in favor of injunctive relief. *Washington,* 2020 WL 5568557, at *5; *Jones*, 2020 WL 5627002, at *26; *Pennsylvania*, 2020 WL 5763553, at *39–40; *New York*, 2020 WL 5763775, at *11–13; *Vote Forward*, 2020 WL 5763869, at *10–13. In fact, no court presented with a motion for an injunction against USPS regarding election mail this year has declined to order relief.

---

[6] In *Washington v. Trump*, the Court also held that the Postal Service "infringed on the States' constitutional authority to regulate elections and the people's right to vote." 2020 WL 5568557, at *4.

The injunctions entered elsewhere do not simply order USPS to halt its unlawful policy and operational changes, but impose affirmative obligations on USPS to give election mail special treatment.  In *Washington,* the court has ordered USPS to "take 'extraordinary measures' between October 26 and November 24, to accelerate the delivery of ballots," including by undertaking "expedited handling, extra deliveries, and special pickups . . . to connect . . . completed ballots returned by voters entered close to or on Election Day to their intended destination (e.g. Priority Mail Express, Sunday deliveries, special deliveries, running collected ballots to Boards of Elections on Election Day, etc.)."  (Bradford Decl., Ex. A-18 at ¶ 1(b).) Similarly, in *Pennsylvania*, the court ordered that USPS will be "deemed in compliance" if it authorizes "overtime" and "[e]xtra transportation resources" "to ensure that Election Mail reaches it's intended destination in a timely manner."  (Bradford Decl., Ex. A-19 at ¶ 3.)  In *Jones*, the court ordered USPS to codify its "policy requirements" and "recommended practices" regarding election mail into a "Guidance Document" for "all USPS managerial staff," subject to court approval.  (Bradford Decl., Ex. A-20 at ¶¶ 7– 8.)[7]  The Guidance Document, since approved, includes among its "recommended" practices "early collections the week before Election Day to ensure all collected ballots are processed timely, and delivery of ballots found in collections on Election Day to election boards within states requiring ballots be returned by a designated time on Election Day."  (Bradford Decl., Ex. A-23 at 1, 3.)

---

[7] For the Court's convenience, the USPS's revised guidance and instructions to employees are provided for reference and consideration.  (*See* Bradford Decl., Exs. A-21–A-23.)

The relief Plaintiff seeks here would operationalize these existing orders in the particular context of Florida's decentralized electoral system and massively expanded mail voting operation this year.  In particular, Plaintiff seeks to ensure that USPS has implemented adequate and functionally uniform protocols at the county level for getting ballots into the hands of election supervisors before 7:00 p.m. on Election Day.

## II.      Plaintiff Has A Substantial Likelihood Of Success On The Merits.

"[S]ubstantial likelihood of success on the merits requires a showing of only likely or probable, rather than certain, success." *City of South Miami v. Desantis*, 408 F.Supp.3d 1266, 1292 (S.D. Fla. 2019) (quoting *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005)). Here, there is "likely or probable" success on the merits of Plaintiff's 39 U.S.C. § 3661, right-to-vote, and equal protection claims.

### A.      Plaintiff Will Likely Succeed On Its 39 U.S.C. § 3661 Claim.

"When the Postal Service determines that there should be a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis" it must seek guidance from its independent regulator, "the Postal Regulatory Commission ['PRC'] requesting an advisory opinion on the change."  39 U.S.C. § 3661(b).  This process ensures that the public has a say in major postal changes.  Before issuing an advisory opinion, the PRC must hold formal on-the-record hearings under 5 U.S.C. §§ 556–57, and must specifically provide an opportunity to be heard to "the Postal Service, users of the

mail, and an officer of the [PRC] who shall be required to represent the interests of the general public."  § 3661(c).[8]

USPS has not undertaken any of the steps required by section 3661 with respect to its recent policy pronouncements and operational changes, clearly violating the law.  Under *Buchanan v. U.S. Postal Service*, 508 F.2d 259 (5th Cir. 1975), which binds this Court, USPS was required to do so.  *Buchanan* lays out a three-part test to determine whether a USPS action triggers the requirements of section 3661:

> "First, there must be a 'change.' This implies that a quantitative determination is necessary.  There must be some meaningful impact on service. Minor alterations which have a minimal effect on the general class of postal users do not fall within 3661."

> "Second, the change must be 'in the nature of postal services.' This involves a qualitative examination of the manner in which postal services available to the user will be altered."

> "Third, the change must affect service 'on a nationwide or substantially nationwide basis.' A broad geographical area must be involved."

*Buchanan*, 508 F.2d 262–63.  Here, all three factors are satisfied.

That the USPS violated section 3661 is all but beyond dispute.  As explained *supra* in Section I, five different federal district courts have already found a sufficient probability of success on the merits on claims related to the illegality of USPS's actions.  Three of these courts specifically considered the merits of a 39 U.S.C. § 3661 claim, and all three determined that plaintiffs demonstrated "likely or probable"

---

[8] Such hearings resemble formal trials and include taking of evidence and testimony, a burden of proof on the proponent (*i.e.*, the Postal Service), and adversarial presentation of the issues.  5 U.S.C. §§ 556–57.

success.  *Washington*, 2020 WL 5568557, at *4–5; *Pennsylvania*, 2020 WL 5763553, at *39; *New York* 2020 WL 5763775, at *9.

The courts in *New York,* 2020 WL 5763775, at *9–10, and *Pennsylvania*, 2020 WL 5763553, at *29, 36-39, specifically construed section 3661(b) in light of the *Buchanan* factors in finding likelihood of success on the merits.  The *New York* court held that "[t]here is no dispute that the USPS did not comply with Section 3661(b) prior to implementing" the USPS policy changes.   The same reasoning applies here. A strong likelihood of success on Plaintiff's section 3661 claim is clear.

### B.     Plaintiff Will Likely Succeed On Its Right-to-Vote Claim.

Plaintiff is also likely to succeed on its right-to-vote claim under the U.S. Constitution.  "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Burdick v. Takushi*, 504 U.S. 428, 441 (1992) (quotation omitted).  In a typical voting rights case, it is a "State's election laws" or state official that abridges "the rights protected by the First and Fourteenth Amendments," *Anderson v. Celebrezze*, 460 U.S. 780, 788-89 (1983), but the Postal Service—an arm of the federal government—is no less bound not to interfere with the constitutional "'right of qualified voters, regardless of their political persuasion, to cast their votes effectively,'" *id.* at 787 (quoting *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968)).[9]

_____

[9] Restrictions on the right to vote are traditionally subject to strict scrutiny.  *See Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 626 (1969); *Evans v. Cornman*, 398 U.S. 419, 422 (1970); *Cipriano v. City of Houma*, 395 U.S. 701, 704 (1969).  Challenges to *state* election procedures, however, are governed by the more flexible *Anderson-Burdick* test, which recognizes the "active role" state governments "must play . . . in structuring elections" and

Under *Anderson-Burdick*, courts "weigh 'the character and magnitude of the asserted injury to the rights' of voters to participation in an election against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,'" considering "'the extent to which those interests make it necessary to burden the [voters'] rights.'" *Burdick,* 504 U.S. at 434 (quoting *Anderson,* 460 U.S. at 789); *accord Democratic Executive Committee of Florida v. Lee,* 915 F.3d 1312, 1318 (11th Cir. 2019). "The more a challenged law burdens the right to vote, the stricter the scrutiny to which we subject that law." *Lee,* 915 F.3d at 1318-19. Even "when a law imposes only a slight burden on the right to vote, relevant and legitimate interests of sufficient weight still must justify that burden." *Id.*

Without a doubt, complete disenfranchisement—as would be the case for the thousands of voters whose ballots will be discarded absent relief from this Court—is a "severe" burden. *See Democratic Executive Committee of Florida,* 915 F.3d at 1318, 1321 ("it is a basic truth that even one disenfranchised voter—let alone several thousand—is too many") (quoting *League of Women Voters of N.C. v. North Carolina,* 769 F.3d 224, 244 (4th Cir. 2014)). The focus is not on the burden to the electorate as a whole, but on the individual voters whose right to vote is impacted. *See Crawford*

---

that "subject[ing] every voting regulation to strict scrutiny . . . would tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Burdick*, 504 U.S. at 433. It is an open question whether traditional strict scrutiny or the *Anderson-Burdick* standard governs the Postal Service's actions burdening the right to vote. *See Jones*, 2020 WL 5627002, at *14–15. Unlike state governments, the Postal Service is not charged with crafting election systems writ large but only has a narrow, well-defined role: transporting ballots reliably. As such, it may not be owed the leeway implicit in the *Anderson-Burdick* test. *Id.* The Court need not resolve this issue, however, because Plaintiff is likely to succeed under either standard. *Id.* at *26.

*v. Marion Cty. Election Bd.,* 553 U.S. 181, 201 (2008); *Frank v. Walker*, 819 F.3d 384, 386 (7th Cir. 2016).  In fact, courts have regularly found a severe burden where laws disenfranchised far fewer voters than the number of Floridians whose ballots will be nullified here.  *See, e.g., Ga. Coal. For People's Agenda, Inc. v. Kemp,* 347 F.Supp.3d 1251, 1264 (N.D. Ga. 2018) (severe burden where 3,141 individuals impacted); *Frank*, 460 U.S. at 386 (*Anderson-Burdick* claim "is potentially sound if even a single person eligible to vote" is unable to do so).

The severe burden is especially pronounced here where voters will be disenfranchised, due to no fault of their own.  *See Ne. Ohio Coal. for Homeless v. Husted,* 696 F.3d 580, 597 (6th Cir. 2012) (likely constitutional violation where state failed to identify "precise interests" justifying "substantial burden" where ballots were rejected due to no fault of the voter).  Voters, heeding the advice of public health experts and state officials, are turning to mail-in balloting at unprecedented rates in order to protect themselves and their fellow citizens.  Without relief from this Court, tens of thousands of otherwise legal votes will be nullified due to the foreseeable and avoidable failures of the USPS, and through no fault of the voters.

Conversely, the burden on the USPS from the relief Plaintiff seeks is minimal and strictly administrative.  This is particularly clear given that Plaintiff's proposed relief is patterned on what two of Florida's most populous counties—Broward and Palm Beach—have already adopted.  *See Martin v. Kemp,* 341 F.Supp.3d 1326, 1339-40 (N.D. Ga. 2018), *appeal dismissed sub nom. Martin v. Sec'y of State of Ga.,* No. 18-14503-GG, 2018 WL 7139247 (11th Cir. Dec. 11, 2018) ("Because many of the

procedures Plaintiffs request are already in place, the Court finds that additional procedures would involve minimal administrative burdens[.]").  Postal managers in other Florida counties plainly could follow suit with similarly effective protocols. That they apparently have not done so reflects an unjustified disparity in the treatment of ballots.  *Cf. Democratic Executive Committee of Florida*, 915 F.3d at 1320 (finding likelihood of success on *Anderson-Burdick* claim because "Florida allows each county to apply its own standards and procedures [] virtually guaranteeing a crazy quilt of enforcement . . . from county to county").  As explained *supra* in Section I, two courts have found a likelihood of success on the merits of a right-to-vote claim based on the facts presented here.  *See Jones*, 2020 WL 5627002; *Vote Forward*, 2020 WL 5763869.  The same reasoning applies here.

### C.    Plaintiff Will Likely Succeed On Its Equal Protection Claim.

Voters "enjoy a Fourteenth Amendment right to participate equally in the electoral process."  *Democratic Exec. Comm. of Fla.*, 915 F.3d at 1319.  "[O]nce granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."  *Bush v. Gore,* 531 U.S. 98, 104-05 (2000).  "Specific rules designed to ensure uniform treatment" are necessary to prevent against "arbitrary and disparate treatment [of] voters."  *Id.* at 106-07.[10]

---

[10] *Bush v. Gore* reaffirmed longstanding equal-protection principles against arbitrary and disparate treatment of voters.  *See, e.g.*, *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 665 (1966) ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment."); *Reynolds v. Sims*, 377 U.S. 533, 554, 555 (1964) ("[T]he Equal Protection Clause guarantees the opportunity for equal participation by all voters" in elections.).  And while those cases were decided under the Fourteenth Amendment, the same principles apply against the federal

The Postal Service has now adopted procedures in two counties in order to prioritize election mail, but it has failed to implement that commitment consistently at the county level in Florida.  The absence of functionally-equivalent protocols and safeguards across the state for delivery of ballots to county election officials is "[in]consistent with [the] obligation to avoid arbitrary and disparate treatment of the members of [the] electorate."  *Bush,* 531 U.S. at 105.

In the absence of reasonably uniform protocols, whether or not a vote is counted would depend solely on where a voter lives.  But this is exactly what the Constitution guards against.  *See League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 476, 478 (6th Cir.2008) (prohibiting "arbitrarily deny[ing] [citizens] the right to vote depending on where they live," including by imposing "more severe wait times in some counties than in others"); *cf. Sims*, 377 U.S. at 566 (burdening the right to vote "because of [a voter's] place of residence impairs basic constitutional rights under the Fourteenth Amendment").  As another court has written during this election season, equal protection is offended where "a voter's right to vote . . . may hinge on random chance," because their vote counts—or doesn't—depending "entirely on the speed at which their local post office deliver[s] their votes."  *Gallagher v. N.Y. State Bd. of Elections,* No. 20-cv-5504, 2020 WL 4496849, at *19–20 (S.D.N.Y. Aug. 3, 2020).  *See also Jones*, 2020 WL 5627002 (S.D.N.Y. Sept. 21, 2020) (finding likelihood of success on equal protection claim).  The same reasoning applies here.

---

government under the Fifth Amendment. *See Buckley v. Valeo*, 424 U.S. 1, 93 (1976) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment").

III.     **Absent An Injunction, Plaintiff's Members and All Florida Voters Will Suffer Irreparable Harm to Their Fundamental Right to Vote.**

There can be no question that a voter suffers irreparable injury if they are denied the opportunity to vote.  The right to vote is "fundamental," *Tashjian v. Republican Party of Conn.,* 479 U.S. 208, 217 (1986), and "preservative of all rights," *Yick Wo v. Hopkins,* 118 U.S. 356, 370 (1886).[11]  When there's an "abridgement to the voters' constitutional right to vote . . . irreparable harm is presumed and no further showing of injury need be made."  *Touchston v. McDermott,* 234 F.3d 1133, 1158-59 (11th Cir. 2000); *Obama for Am. v. Husted,* 697 F.3d 423, 436 (6th Cir. 2012) (where "constitutional rights are threatened or impaired, irreparable injury is presumed."). *Accord League of Women Voters of Fla., Inc. v. Detzner,* 314 F.Supp.3d 1205, 1223 (N.D. Fla. 2018).  And, "[o]nce the election comes and goes, 'there can be no do-over and no redress.'" *Detzner,* 314 F.Supp.3d at 1223 (*quoting League of Women Voters of N.C. v. North Carolina,* 769 F.3d 224, 247 (4th Cir. 2014)).  Plaintiff's members will not be re-enfranchised through payment of monetary damages or any other relief.  *See ABC Charters, Inc. v. Bronson,* 591 F.Supp.2d 1272, 1309 (S.D. Fla. 2008).[12]

---

[11] "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders,* 376 U.S. 1, 17 (1964).

[12] The deprivation of required procedural protections, like those outlined in section 3661, are also an irreparable injury.  "The denial of . . . a [Section 3661] hearing, should one be required, is sufficient irreparable injury to support interlocutory injunctive relief, for it is clear that no hearing will be conducted and that the changes will continue unless enjoined."  *Buchanan,* 375 F.Supp. 1014, 1022 (N.D. Ala. 1974), *aff'd in relevant part*, 508 F.2d at 266 ("[T]he District Court was correct. . . that plaintiffs had properly established that there was a substantial threat of irreparable injury" as necessary to warrant preliminary injunctive relief.).

Indeed, the Court need look no further than the five nationwide injunctions already issued to know that the actions of the USPS pose a high risk that mail-in ballots may not be delivered in time, and that such an outcome would irreparably injure Florida voters, including Plaintiff's members. Any delays (however slight) in the processing and delivery of election mail—particularly during the final two weeks leading up to November 3—will determine whether thousands of valid ballots arrive by Florida's 7:00 p.m. deadline on Election Day and are therefore counted, or whether they are simply discarded.

## IV. The Equities And The Public Interest Favor Injunctive Relief.

Finally, the balance of the equities and the public interest strongly favor issuing a preliminary injunction. The equities favor Plaintiff and its members, who face the real threat of losing their constitutional right to vote. USPS faces, at most, an administrative inconvenience, which cannot justify impinging on thousands of Floridian's fundamental rights. *See Ga. Coal. for People's Agenda, Inc. v. Kemp,* 347 F.Supp.3d 1251, 1268 (N.D. Ga. 2018) (increased administrative burden "minimal compared to the potential loss of a right to vote"); *Fla. Democratic Party v. Scott,* 215 F.Supp.3d 1250, 1258 (M.D. Fla. 2016) ("it would be nonsensical to prioritize [administrative] deadlines over the right to vote").

In addition, the relief Plaintiff seeks here is merely a return to the status quo before USPS degraded its service, wherein USPS prioritized and timely delivered election mail to and from voters. Plaintiff simply requests that USPS be ordered to apply uniform measures across all Florida counties, consistent with the framework and protocols it (meaning USPS) has already put in place in Broward and Palm

Beach counties—two of the busiest counties in the state—and to adhere to policies and practices that have been in place for years, and utilized in prior elections. Any burden on USPS is thus, by definition, minimal.

The proposed injunction will promote strong public interests, including securing the right to vote for ***all*** Floridians, promoting public confidence in the election, and protecting the integrity of its results. *See Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012) ("The public interest. . . favors permitting as many qualified voters to vote as possible."). An injunction would also promote public confidence in the mail as a reliable means of voting, and allow voters to avoid the face-to-face interactions that public health officials now discourage in order to mitigate viral transmission. And "[t]he public interest is served both by ensuring that government agencies conform to the requirements of the APA and their own regulations . . .", as Plaintiff's section 3661 claim seeks here. *Gulf Coast Mar. Supply, Inc. v. United States,* 218 F.Supp.3d 92, 101 (D.D.C. 2016).

The equities and the public interest strongly favor issuing an injunction.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant a preliminary injunction as detailed in Plaintiff's attached proposed order.

## REQUEST FOR HEARING

Plaintiff respectfully requests a one hour hearing on its Emergency Motion for Preliminary Injunction to be heard on or before October 23, 2020, but only to the extent the Court believes such a hearing would be helpful to the Court in ruling on the Motion.  Plaintiff submits that a hearing may be helpful to the Court because it will afford an opportunity for the Court to hear further about the wealth of evidence and law that support this Motion, and it will also permit both parties to address any developments that have occurred subsequent to the filing of this Motion, and prior to the Court's decision.

## EMERGENCY MOTION CERTIFICATION

After reviewing the facts and researching applicable legal principles, I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide meaningful relief to a critical, non-routine issue after the expiration of seven days.  I understand that an unwarranted certification may lead to sanctions.

RESPECTFULLY SUBMITTED,

**1199SEIU United Healthcare Workers East,**

By: /s/ David J. Bradford
One of Plaintiff's Attorneys

Igor Hernandez
FLA Bar Number 106386
CORNISH HERNANDEZ GONZALEZ, PLLC
2525 Ponce de Leon Blvd. Suite 300
Coral Gables, FL 33134
(305) 501-8021
Ihernandez@chglawyers.com

David J. Bradford
Daniel J. Weiss
Ashley M. Schumacher
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois  60654-3456
Telephone:  (312) 222-9350
dbradford@jenner.com
dweiss@jenner.com
aschumacher@jenner.com

Nayiri Pilikyan
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071-2054
Telephone:  (213) 239-5100
npilikyan@jenner.com

Jonathan Manes
RODERICK & SOLANGE MACARTHUR JUSTICE CENTER
160 E. Grand Ave, 6th Floor
Chicago, IL 60611
Tel: 312-503-0012
jonathan.manes@law.northwestern.edu

Jon Loevy
Gayle Horn
Anand Swaminathan
Steve Art
Julia Rickert
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
steve@loevy.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on October 16, 2020, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: <u>/s/ Igor Hernandez</u>
One of Plaintiff's Attorneys