# **EXHIBIT 26**



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street, 3rd Floor*
*New York, New York 10007*

October 16, 2020

**VIA ECF**

Hon. Victor Marrero, United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

      Re:    *Jones* et al. *v. United States Postal Service* et al., No. 20 Civ. 6516 (VM)

Dear Judge Marrero:

    This Office represents the defendants in the above-referenced case. We write respectfully pursuant to the Court's September 25, 2020 Order, ECF No. 57 (the "Order").[1] In accordance with paragraph 6 of the Order, Defendants submit herewith:

(1) The weekly service performance update provided by the United States Postal Service ("USPS") to Congress on October 15, 2020 (pertaining to First-Class Mail, Marketing Mail, and Periodicals) (Exhibit 1), as well as a relevant USPS press release (Exhibit 2);

(2) A report reflecting the weekly national scores and service variance for Presort First-Class Mail (Overnight, 2-Day and 3-5 Day) and Single-Piece First-Class Mail (2-Day and 3-5 Day), for the same period of time covered by the October 15, 2020 Congressional update[2] (attached hereto as Exhibit 3);

(3) As discussed in more detail below, a summary of any and all data and information collected by USPS Headquarters regarding USPS's handling of Election Mail at the Headquarters level and compliance with USPS policies regarding Election Mail, USPS recommended practices regarding Election Mail, and the terms of the Court's September 25, 2020 Order specifically pertaining to Election Mail.

---

    [1] The information contained in this letter has been provided to this Office by the United States Postal Service, to be provided to the Court to comply with Defendants' obligations under the Order.

    [2] The first column in each category shows the overall service performance score; the Percent within +1 day, +2 days, and +3 days columns show the performance one day later, two days later, and three days later (service variances).

### *Summary of Data and Information Regarding Election Mail Handling and Compliance*

Historically, USPS Headquarters has compiled three categories of data or information relating to its handling of Election Mail and compliance in the field with Election Mail policies and practices: (1) All Clear Reports, (2) Advanced Volume Reports, and (3) Election Mail Service Reporting.[3] As mentioned in its previous report (ECF No. 86), USPS has begun to develop and utilize a new type of service reporting data, tracking mailpieces specifically marked (at the discretion of election officials) with ballot identifiers, and will also begin reporting this to the Court as soon as it has been sufficiently validated.

1. **All Clear Reports**

As USPS has previously described to the Court, *see* ECF No. 28 ¶ 19, USPS uses daily "all clears" to ensure that all Election Mail is accounted for within the system. In the all clear process, in-plant support personnel in processing or delivery units use a checklist to confirm that mail scheduled or "committed" to go out that day has gone out, and anything committed for the next day is at the front of the line.[4] Personnel conducting all clears consult Election Mail logs, and also check all locations within the facility (*e.g.*, processing equipment) to ensure that all pieces of Election Mail in the facility's possession are in the right location.

All Clear Reports help USPS identify facilities that require additional follow-up to enforce their compliance with the daily all clear policy. Each USPS processing plant, delivery unit, and reporting retail unit is required to certify, through an online system, its all clear performance every day. Reports showing USPS's "all clear" reporting results for the time period from October 3 to 9, 2020, are attached hereto as Exhibit 4, broken down by geographic Division (for mail processing plants) and by geographic Area (for delivery/retail units).

In these reports, the "Total Count" column totals the number of facility reports expected each week (in other words, it reflects the number of facilities multiplied by seven); "No Response" reflects how many expected reports were not submitted; and "Non-Compliant" indicates that a facility did not clear all of its Election Mail that day. It is important to note that a "Non-Compliant" certification does not necessarily indicate that a facility failed to properly comply with the all clear process on a given day; it indicates primarily that the facility located some Election Mail that it did not clear that day, often for reasons unrelated to any operational

---

[3] As a general matter, USPS collects an enormous amount of raw data regarding its products and operations, some of which would incidentally bear on the performance of Election Mail. For example, in accordance with paragraphs 6(a) and (b) of the Order, USPS is providing weekly data updates to the Court regarding the service performance of all First-Class Mail, Marketing Mail, and Periodicals, which encompasses but extends far beyond Election Mail. USPS understands paragraph 6(c) of the Order as referring to data and information that USPS Headquarters customarily collects specifically relating to Election Mail, all of which is discussed herein.

[4] Many, but not all, retail units are also required to certify their all clear performance each day. Some very small retail units are not required to certify their all clear performance.

deficiency. As discussed above, the all clear process is principally aimed at making sure that all Election Mail within a facility is accounted for, and anticipates that some Election Mail (for example, Election Mail received too late in the day or night to process) may be located during a facility-wide check and committed to go out at the front of the line the next day.

If a facility submits no "all clear" response on a given day, USPS Headquarters alerts the relevant District Manager or Division director to follow up. If a particular facility exhibits a pattern of non-responses, USPS may take a corrective action.

2. **Advanced Volume Reports**

Advanced Volume Reports help USPS estimate the amount of Election Mail, primarily that which is sent as Marketing Mail, that is advanced. Using the Mail Condition Visualization system, which is USPS's system of record for mail processing conditions, USPS can count the number of mailpieces that receive their final processing scan (meaning that they have gone through processing and are about to be sent to delivery units) prior to their expected date of delivery. In other words, USPS is able to detect mailpieces that are processed and readied for delivery ahead of schedule, when compared with their expected delivery standard, as a consequence of USPS's policies of advancing mail (especially Election Mail).[5] It is important to note that Advanced Volume Reports set forth absolute numbers without denominators, and as such may not fully depict USPS's general performance with respect to Election Mail in a given week (*e.g.*, what *percent* of Election Mail USPS received and advanced in a given week).

For the time period from October 3 to 9, 2020, USPS data shows that 26,040,395 pieces of Election Mail were advanced. This data represents a 69.5% increase over the previous week, in which 15,362,663 pieces of Election Mail were advanced.

3. **Election Mail Service Reporting**

USPS has recently collected and referred to, for internal purposes, data from mailpieces that election officials have chosen to track using USPS's Intelligent Mail barcode ("IMB"), and identified on "entry" as Election Mail.[6] Only a subset of Election Mail is sent using this tracking technology, and USPS does not currently have data to specifically track and analyze the service performance of Election Mail that does not utilize this feature. Therefore, the Election Mail Service Reporting described in this section is not a representatively accurate measurement of the service performance of all Election Mail handled by USPS.

---

[5] Generally speaking, the vast majority (approximately 98%) of mailpieces that receive their final processing scan are delivered the next day. Due to a number of factors, including mail being missorted, missequenced, or natural disasters, a very small fraction of mail that has received its final processing scan may be delivered a day later.

[6] As USPS has previously noted, because state and local election officials control all aspects of the design of Election Mail, those officials are responsible for choosing whether to make use of USPS's Intelligent Mail Barcode for Election Mail. *See, e.g.*, ECF No. 28 ¶ 4. USPS does not charge an additional fee for the IMB; in fact, election officials may receive a discount for opting to use that tracking feature.

The Election Mail Service information discussed herein and reported previously (ECF Nos. 68, 86) has not previously been customarily or "officially" reported outside USPS. While that data is used internally by USPS, it has not gone through USPS's rigorous data validation processes (similar to the processes used for the data reported to the Postal Regulatory Commission, and more recently reflected in the weekly service performance reports to Congress). Therefore, the Election Mail Service figures reported previously and this week do not constitute official service performance measurements. As such, while these figures may provide some insight about trends in service, the underlying numbers are subject to revision and change, once they are subjected to thorough validation.[7]

In addition, the Election Mail Service figure reported previously and this week tracks the performance of Election Mail within USPS's operational network, which is the mailpiece's time between its first and last processing operations. It does not incorporate the "First Mile," which represents the time from acceptance of the mailpiece (*e.g.*, from a collection box or retail unit) to the first processing operation, or the "Last Mile," which tracks mailpieces from their last processing hit to delivery. "First Mile" and "Last Mile" data are not incorporated into this Election Mail Service figure for two principal reasons: first, those two measurements are derived from statistically valid sampling at the aggregate product level (*e.g.*, sampling of *all* First-Class Mail), which cannot practicably or reliably be adapted to specifically track Election Mail; and second, because Marketing Mail, including Election Mail entered by election officials as Marketing Mail, does not have a "First Mile" measurement. USPS clarifies also that the Election Mail Service information reported previously and this week does not include a subset of Election Mail that election officials may choose to identify through the use of ballot-specific Service Type ID ("STID") codes within IMBs. USPS has determined that information relating to the performance of mailpieces that election officials opt to identify using ballot STID codes is maintained separately and has not been incorporated into the Election Mail data that USPS has collected and referred to for internal purposes. As such, that data was not included in the metric provided previously or this week.[8]

Lastly, USPS considers this Election Mail Service Performance information to be confidential and not subject to public disclosure under 39 U.S.C. § 410(c). In addition to not being a representatively accurate measurement of the service performance of all Election Mail handled by USPS for the reasons described above, it is also a subset of First-Class Mail and Marketing Mail data that is more disaggregated than is otherwise publicly shared. Nor does the USPS otherwise report on a combination of a subset of First-Class Mail and Marketing Mail in this manner in other contexts. As such, this information is commercial in nature and would not

---

[7] USPS data analysts finalized the validation of the Election Mail Service data responsive to paragraph 6(c) of the Order this evening. USPS anticipates that it will begin using this validated data internally during this coming week, and will start reporting validated numbers to the Court and Plaintiffs starting next week, including updated numbers (if applicable) from prior weeks.

[8] USPS data analysts also finalized the validation of data relating to mailpieces bearing ballot STID codes this evening, and USPS anticipates that it will start referring to this data internally (and reporting that data to the Court and Plaintiffs) starting next week.

be disclosed under good business practices. USPS is providing the information pursuant to paragraph 6 of the Order, but reserves the right to assert the confidential nature of this information in other contexts.

Bearing these limitations in mind, USPS provides again, herewith, a weekly on-time service percentage for the Election Mail that is trackable using the IMB feature. This figure is included on Exhibit 4, attached, for the week ending October 9, 2020, as well as the previous week, for purposes of comparison.

In addition to the three types of data and information discussed above, which USPS Headquarters customarily collects relating to Election Mail (and the data relating to mailpieces bearing a ballot-specific STID code), USPS is currently collecting additional data as part of ongoing attempts to develop new techniques and metrics related to Election Mail, including its ballot cancelation performance, and other useful metrics. Attempts to gather and interpret this data are still in the early stages, and the data is not currently reliable enough for the Postal Service to use to track its performance. As such, this data is not currently susceptible to analysis.

USPS is attempting to develop these new metrics as quickly as possible and will supplement its reporting to the Court as soon as they are developed.

\*\*\*

Finally, on October 14, 2020, USPS distributed the Supplemental Guidance Document approved by the Court on October 10, 2020 (ECF Nos. 85-1, 87) to nearly 50,000 USPS employees by electronic mail, as indicated in the Document. *See* ECF No. 85-1 at 1; Order ¶ 9. The email distributing the Document instructed each recipient to follow an embedded link to an electronic certification page. USPS established this method for electronic certification in order to comply with the Court's directive to "certify . . . whether all USPS managerial staff members have certified that they have read, reviewed, and understand the Supplemental Guidance Document." Order ¶ 9. As of the filing of this update, 25,697 USPS employees, comprising primarily managerial employees,[9] have electronically certified that they have read, reviewed, and understand the Supplemental Guidance Document. This represents an approximately 52 percent response rate in the first two days following distribution of the Document.

After the initial distribution of the Supplemental Guidance Document on October 14, daily notices have been sent to USPS officers identifying individuals in their organizations who have not yet completed the certification, so that the officers can continue to remind staff to review and certify until certification is complete. Reminders are being sent by email and have been made during meetings and webinars. USPS intends to update the Court weekly as to its ongoing compliance with paragraph 9 of the Order.

USPS has also posted the Supplemental Guidance Document on the USPS intranet at blue.usps.gov and litebluse.usps.gov. *See* ECF No. 85-1 at 4. Moreover, on October 16, 2020,

---

[9] Employees on the Executive and Administrative Schedule ("EAS"), to whom the Supplemental Guidance Document was distributed, include some non-managerial staff members.

USPS issued a two-part Mandatory Stand-Up Talk for all employees reinforcing the topics covered in the Supplemental Guidance Document. USPS instructed Postmasters, Managers, and Supervisors that the two-page oral portion of the mandatory talk must be read to all employees beginning upon receipt and continuing until all tours have received the talk. USPS also directed that the accompanying three-page written portion of the mandatory talk must be posted in a prominent location for all employees to read, or alternatively, where practical, printed out and copies given to each employee.

Respectfully,

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By: /s/ Rebecca S. Tinio_____
    REBECCA S. TINIO
    STEVEN J. KOCHEVAR
    Assistant United States Attorneys
    86 Chambers Street, Third Floor
    New York, New York 10007
    Tel.: (212) 637-2774/2715
    E-mail: rebecca.tinio@usdoj.gov
           steven.kochevar@usdoj.gov