# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| 1199SEIU United Healthcare Workers East,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>Louis DeJoy, Postmaster General, United States Postal Service, and the United States Postal Service,<br><br>　　　　　　Defendants.<br>_____ | NO. 1:20-cv-24069-RNS |

## DECLARATION OF TIMOTHY COSTELLO

I, Timothy Costello, under penalty of perjury and in lieu of affidavit as permitted by 28 U.S.C. § 1746, hereby declare as follows

1. I am currently acting as the Vice-President of Delivery and Retail Operations for the Southern Area, which includes Florida. I have been with the Postal Service for roughly 33 years. In the last 10 years I have been a district manager in five different districts, including South Florida. I was the District manager in South Florida from 2017 through October of 2019. From October 2019 to October 2020, I served as Acting Vice-President of Sales.

2. I am familiar with this lawsuit, and the context in which it arose. This declaration is intended to provide information, on the basis of my personal knowledge and experience,

as well as information gathered for the purpose of this declaration to (1) demonstrate the Postal Service's efforts to ensure that ballots are promptly delivered nationwide, including in Florida; (2) explain the reasons that Plaintiff's proposed order would not assist with these efforts, and would instead complicate them; and (3) provide specific information about ongoing efforts in Florida, and the potential deleterious impact of Plaintiff's proposed order.

**Extraordinary measures undertaken by the Postal Service**

3. Every federal election cycle, the Postal Service takes extraordinary measures to deliver ballots in time for them to be counted. The Postal Service takes its role in the electoral process extremely seriously.

4. These measures have typically been informal practices undertaken by the Postal Service. This year, however, to demonstrate the Postal Service's commitment to the timely and secure delivery of Election Mail, and in light of the anticipated increase in use of mail-in ballots, the Postal Service issued a formal memorandum outlining extraordinary measures that should be taken by retail and delivery units (i.e., Post Offices, stations, and branches), and pre-authorizing those measures.

5. The Extraordinary Measures memorandum makes clear that the use of extraordinary measures beyond the Postal Service's normal course of operations is authorized and instructed to be executed by local management between October 26 and November 24. The memorandum provides a list of examples of the types of extraordinary measures that are authorized and instructed to be undertaken but is not intended to be an exhaustive list of measures available. If local offices would like to employ an extraordinary measure not identified in the list, offices are instructed to contact the Command Center established by

Retail and Delivery Operations at Headquarters, which is dedicated to providing guidance and answering questions from the Field on Election Mail, ballot handling, or any election-related issue. This contact with the Command Center is intended to ensure that all extraordinary measures are operationally feasible and will aid in the goal of timely delivery. This memorandum, which is attached to this declaration, was issued to nearly 50,000 Postal Service employees on October 20, 2020. It is intended to empower local operations managers to make decisions to effectuate the timely delivery of Election Mail in their specific circumstances.

6. The authorized measures for retail post offices include establishing special lines at retail counters for customers mailing ballots, extended retail hours, establishing drive through ballot drops, and, in some circumstances, providing local delivery from some retail facilities directly to the local Board of Elections without first sending the mail to a processing plant. These measures are authorized but are not required and will not be appropriate for many retail facilities. For example, some facilities with a small staff may not be able to open separate lines for ballots, nor would it be necessary given the limited number of customers that they serve. Similarly, they may not be able to deliver ballots directly to a Board of Elections that is geographically distant, without shutting down the retail office, which would be significantly less efficient than allowing the mail to be processed at a Postal Service plant and transported through our established logistics network. By authorizing and supporting these measures, while allowing for local discretion regarding which measures to implement, the Postal Service avoids the inefficiencies and confusion a one-size-fits-all approach would impose on an organization with tens of thousands of retail units with unique circumstances.

7. Similar measures are authorized for delivery units, some of which are similarly at the discretion of local units, some of which are mandatory, and some of which are based on the size of the unit. Level 21 and above offices, which are larger offices that typically have at least 5 collection boxes distributed throughout communities they serve, must run regular collections of those boxes on Sunday November 1st, and coordinate with local plants to make sure any ballots are run through Postal Service cancelation machines. Level 18-20 offices, which typically only have collection boxes at the office itself, are to collect mail from those boxes on Sunday November 1st, and transport that mail to another office or plant that can ensure it is processed and delivered.

8. At their discretion, offices are authorized to bypass automation to deliver ballots directly to a local Board of Elections, which allows offices with sufficiently large staffs to do so. These measures also include stopping at all delivery points to check for outgoing mail even if the carrier has no mail to drop off at that point, running collections on the Sunday before the election and early collections on November 2 and 3, moving ballots as express mail when necessary, and using supervisors to deliver locally entered ballots to Boards of Elections directly.

9. Offices are also authorized to make separate "hub-and-spoke" deliveries on November 2 and 3 to get ballots to the Board of Elections prior to the applicable cut-off. A hub-and-spoke delivery is when, rather than using the Postal Service's standard transportation network, an office makes an extra trip to transport mail directly to a Board of Elections, or to another Post Office, which can consolidate and transport the mail.

10. The memorandum also contains instructions for postmasters and district managers, which are mandatory. Postmasters are to coordinate after-hours handoffs with Boards of

    Elections and make regular outreach to them, as well as arrange to get ballots from Boards of Elections to voters directly, bypassing processing for local delivery, at the request of election officials and make all efforts to intercept and correct misaddressed and mislabeled ballots. Postmasters do these tasks in collaboration with Election Mail Coordinators, experienced Postal Service employees who can facilitate the process and coordinate with election officials

11. While the Extraordinary Measures memorandum is directed to delivery and retail units, the Postal Service has issued similar memoranda describing additional resources available for processing plants and transportation. These include an Additional Resources memorandum, providing guidance on additional resources available to plants as well as delivery and retail units, issued on September 25th and attached to this declaration. That memorandum explained, among other things, that plants should expand their processing windows as necessary to ensure that ballots are processed expeditiously.

**Impracticability of the proposed order**

12. The changes Plaintiff requests that the court order are impractical and likely to cause confusion and delay this close to the election. In addition, the Postal Service is already implementing measures that achieve the intended effects of the proposed order through far less disruptive means. Last week, the Postal Service delivered approximately 150 million pieces of mail in Florida (excluding packages). Making untested, significant changes to an established, functioning network is highly risky and likely to impede the timely delivery of mail.

13. The requested relief appears to be based on the approach that the Postal Service has committed to take in two large metropolitan areas. For many reasons, some of the

      extraordinary measures that are appropriate for those locations would be inappropriate, harmful, and in some instances, impossible, on a statewide basis, as described in more detail below.

14. The demand in item one of the proposed order that the Postal Service make specific arrangements between each Florida county election supervisor and the nearest Post Office for ballot pickup/drop-off is impractical and inefficient for multiple reasons. First, while some election official's offices are close to large Post Offices capable of making these arrangements, the closest Post Office to other election officials in many instances is a small Post Office with a limited staff (e.g., 2-3 employees) incapable of handling such arrangements. A number of counties have 20-30 smaller Post Offices that lack the staff to sort and the logistical capacity to gather all ballots at the office nearest to the election official. Attempting to set up a new, untested sorting and logistics system this close to an election would cause serious disruption, when the Postal Service's established processing and logistics systems are already functioning. As discussed above, postmasters are instructed to work with election officials to make arrangements for ballot delivery; the local arrangements made between election officials and postmasters are more closely tailored to the needs of those officials than the one-size-fits-all solution from he proposed order.

15. The demand in item two of the proposed order that the Postal Service provide pickup and delivery of ballots on Sundays two weeks before the election is unnecessary. The Postal Service has already committed to collecting ballots on the Sunday before the election, as discussed above and in the Extraordinary Measures memorandum. Collections on Sunday October 25 are not necessary, as mailpieces in the system on October 26 will have

adequate time to be delivered under the Postal Service's service standards, even if delayed by multiple days. Attempting to implement additional collection on such short notice would risk confusing schedules and is not necessary. The Postal Service collects and delivers mail on Saturdays in the ordinary course and will continue to do so.

16. The demands in items 3-5 of the proposed order that the Postal Service bypass processing plants and process mail directly in Post Offices is impossible for many retail units and problematic for most of the others. Imposing such a regime on short notice would be extremely disruptive and create a substantial risk of delaying ballots. Many Post Offices have very few employees and are not equipped to sort mail manually; none have mail sorting equipment; and few have the necessary logistical support to transport mail as proposed by plaintiff. Even separating ballots from the rest of the mail to sort for delivery would require employees at that office to sort through all mail received at the location, a task that would impede the overall timely delivery of all mail. Manual sortation is extremely inefficient compared to the Postal Service's normal processes. The Postal Service primarily utilizes high-speed mail processing machines located in processing and distribution centers, not manual sortation, to process Election Mail in a timely manner. Mail that is collected by carriers on their routes from collection boxes or customer mail boxes is transported to mail processing plants where it is processed and either delivered the day after it is processed or sent through the network to reach a destinating facility in another location.

17. Nonetheless, the Extraordinary Measures memorandum authorizes efforts to separate and deliver ballots without processing them at a plant, at the discretion of the retail office. This allows the large offices to undertake such efforts, without requiring the same of

smaller offices, which would be incapable of doing so without substantial delays. The Postal Service is in the best position to determine how to best sort and deliver the mail, and the local offices are in the best position to determine whether the efforts authorized by the Extraordinary Measures memorandum would be the most effective method for their particular circumstance. Any attempt to impose a one-size-fits-all policy requiring all Post Offices to process mail would risk causing tremendous delay and will lead to ballots not being delivered in time to be counted.

18. The demand in item 6 that all plants run an early sortation would be inefficient, would not lead to more timely delivery of ballots, and may represent a misunderstanding of the process by Plaintiff. Plants sort mail after it is brought to them from retail and delivery units. The sorting schedules are based on the time mail is expected to arrive at the plant. Running an early sortation before mail arrives at a plant would be wasteful and would not expedite ballots. As described in the Additional Resources memorandum, plants have been instructed to increase their processing windows as needed to process ballots expeditiously. Some plants are planning to run an early sortation on Monday, November 2, to process ballots collected throughout the weekend, but this is not universally necessary, and should be left to the discretion of plants, based on whether they have enough unsorted volume to make an early sortation helpful.

19. Plaintiff's early sortation request may be in reference to the statement by the Fort Lauderdale Postmaster that his plant would "run an early sortation to retrieve any ballots in the mailstream." This statement actually appears to be a reference to the practice known as "early sweeps." In early sweeps, the Postal Service scours plants throughout election day looking for ballots and make every attempt to deliver them before the cutoff.

    To the extent this is what Plaintiffs request, the Postal Service is already committed to doing so. To the extent that some plants may have already made arrangements to receive mail deliveries early for the purposes of starting sortation early, early sortation is authorized by the expanded processing windows.

20. Requiring all Post Offices and plants to coordinate with election supervisors, as demanded in item seven of the proposed order, would be redundant with already existing instructions, and be potentially disruptive. Postmasters have already been instructed by the Extraordinary Measures memo to coordinate with Boards of Elections, including arranging after-hours handoffs of ballots, and postmasters and election mail coordinators will facilitate that process. The Postal Service also has Election Mail Coordinators who assist with that function and facilitate such arrangements. To the extent the preliminary injunction seeks to disrupt already existing arrangements with a new one-size-fits-all requirement, it is needlessly disruptive, and risks delaying ballot delivery.

**Florida Specific Efforts**

21. During the 2020 election season, the Postal Service has designated employees to serve as Election Mail Coordinators. Florida is overseen by three Election Mail District Coordinators. These are veteran employees who have worked at the Postal Service for over 15, 25, and 35 years respectively, and are extremely experienced in mail delivery. This section is based on information provided to me by those coordinators.

22. The three election supervisors, in combination with the postmasters within their jurisdiction, have reached out to all Supervisors of Elections within their jurisdiction, and combined, they have spoken to all of them. All three report that either they or the

postmasters within their jurisdictions reached out to election officials to discuss the most efficient way for election officials to pick up or receive ballots on election day.

23. All three coordinators report that their offices plan to coordinate pickups and drop-offs of ballots on election day with local election officials.

24. All three coordinators reported that ordering all Post Offices to bypass processing plants beginning on November 2 would be impractical, and one reported that it likely would have the effect of *delaying* ballots in their jurisdiction.

Executed at Plano, Texas, on this 21st day of October, 2020

_____
Timothy Costello