UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Mondaire Jones, Alessandra Biaggi, Chris
Burdick, Stephanie Keegan, Seth Rosen,
Shannon Spencer, Kathy Rothschild, Diana
M. Woody, Perry Sainati, Robert Golub,
Mary Winton Green, Marsie Wallach,
Matthew Wallach, Mac Wallach, Carol
Sussman, and Rebecca Rieckhoff,
*individually, and on behalf of all others
similarly situated,*

       Plaintiffs,

v.

United States Postal Service, Louis DeJoy,
as Postmaster General of the United States
Postal Service, and Donald J. Trump, as
President of the United States,

       Defendants.

No 20 Civ. 6516 (VM)

## DECLARATION OF JASON DeCHAMBEAU

I, Jason DeChambeau, under penalty of perjury and in lieu of affidavit as permitted by 28 U.S.C. § 1746, state as follows:

1. I am currently employed by the United States Postal Service as Headquarters Director of Processing Operations, a position I have held for approximately two years. I began working for the Postal Service in 1995 as an Industrial Engineer and advanced through other positions, primarily various management positions in Operations, including Manager of Distribution in two locations and Senior Plant Manager.

2. In my role as Director of Processing Operations, I oversee nationwide mail processing operations, including mail processing equipment requirements.

3. I am familiar with the complaint filed in this case and plaintiffs' claims therein.

4. This declaration is based on my personal knowledge, as well as information conveyed to me by my staff and other knowledgeable Postal Service personnel in the course of my official duties and responsibilities.

**Longstanding practice of removing unnecessary mail processing equipment**

5. The Postal Service has a nationwide inventory of machines to process letter and flat mail. Letter mail refers to machinable envelopes enclosing folded letters, greeting cards, and the like, which fall within height, width, and length limitations ranging from less than ¼ inch in thickness to less than a 11 ½ inches in length. The Postal Service uses the word "flats" in reference to larger envelopes, newsletters, magazines. In order to be processed by flat sorting machines, flats must also meet defined size requirements.

6. Machines that process letter and flat mail include the Advanced Facer Canceler System (AFCS), Delivery Barcode Sorter (DBCS), and Automated Flat Sorting Machine (AFSM). The AFCS collates mail piece information, provides electronic image

2

processing, storage, and interfacing functions, and applies a cancellation postmark. The AFSM sorts flats, using automatic feeders, acquires address images for video encoding, and processes mail using optical character recognition technology. Its design includes a module that holds trays (also called bins) that are filled with mail. The DBCS sorts letter mail based on address and ZIP Code information into designated bins to other downstream plants, delivery units, or into ZIP Code sequence for delivery.

7. The Postal Service has removed and/or replaced unnecessary or outdated mail processing and sorting equipment for many years. The Postal Service has numerous reasons for removing machines. Older machines that have been outdated are removed and replaced with machines with improved technology. When facilities or processing operations are consolidated, the Postal Service will remove machines when they are no longer needed to process the volume of mail flowing through the remaining facilities.

8. Postal Service Headquarters has a longstanding practice of monitoring the volume of mail flow at facilities throughout the nation through transmission of electronic data from each machine. Each machine is capable of processing a specific volume of mail when it is operating at full or maximum capacity. If a machine is only operating at, for example, 60% capacity, it is capable of processing much more mail. When data indicates each of two letter sorting machines in one facility is handling less than the capacity of one machine, one of the machines is redundant. For numerous reasons it is more cost-efficient for the number and type of machines to be in alignment with the volume handled by each facility.

9. Unnecessarily keeping underutilized machines in certain locations is inefficient and costly, and, consequently, removing machines is an essential part of the Postal Service's

ongoing efforts to manage its human resources and costs while still striving to deliver mail as expeditiously as possible throughout the nation. Running unnecessary machines leads to numerous additional costs.

10. First, when letter and flat mail volume declines significantly and fewer machines within a facility are needed to process the volume of mail, leaving all machines in place in all locations requires the use of unnecessary work hours. That is so because a facility needs fewer employees to run one machine than two. Additional work time is also required for running each machine that is used. Workers must set up each machine at the beginning of the processing period by taking steps such as setting up trays to hold the processed mail for transportation and must close down the machines when processing is complete. Depending upon employee efficiency, these processes require from approximately twenty minutes to approximately half an hour per shift.

11. In addition, removal of unnecessary machines reduces utility and maintenance costs, including the need for staff hours. The Postal Service employs various numbers of Maintenance Mechanics and Electronic Technicians at each processing facility, depending upon the number of machines at the facility.

12. Use of the correct number of mail processing machines contributes to cost-effectiveness in the transportation of mail, as well. One machine functioning at capacity requires the use of fewer mail trays and processes a higher volume of mail per tray. Accordingly, when the appropriate number and type of equipment needed is utilized, each plane or truck may hold a higher volume of mail moved on efficiently packed trays. Cost savings are achieved when the Postal Service requires fewer trucks or less space on a plane to transport mail.

13. The volume of letter and flat mail has declined significantly during the last decade as use of electronic communications has risen, meaning that the Postal Service needs less letter and flat equipment in order to align with volume reductions. Based on data analyses of machine utilization, the Postal Service removed an average of approximately 388 machines per year from mail processing operations from the beginning of 2015 through 2019. We refer to the process as reduction, or "reducing machines." The reduction numbers include machines that were disconnected from the network, temporarily covered with a tarp, or physically removed. The number of machines reduced varies widely from each fiscal year to the next and is based on the most recent data available on the number and types of machines needed. Postal Service fiscal years begin on October 1 of the preceding calendar year and end on September 30 of that fiscal and calendar year, e.g., fiscal year 2015 ran from October 1, 2014, through September 30, 2015. In fiscal year 2016, we reduced 1,120 letter and flat sorting machines, while the following year we reduced only 197 machines. (See chart following paragraph 20.)

**Nationwide equipment reduction**

14. In January 2017, Headquarters began an equipment-reduction initiative as a network operations efficiency strategy. The first phase was directed at reducing DBCS and AFSM machines to match mail volume projections. Each of the seven Postal Service areas completed an initial analysis to arrive at the number of machines to be reduced, which they submitted to Headquarters Processing Operations. Headquarters tracked the progress of reductions weekly and addressed any area requests for a deviation from the plan, such as delays in removing machines.

15. Between 2017 and April 2020, the Postal Service ran four additional phases. Headquarters Operations Research group created and ran a computer model to determine the optimum number of machines required for efficient mail processing at facilities across the nation and monitored the reductions on an ongoing basis. The model considers the variation in volume by using the 95th percentile of heaviest daily volume excluding December (a month with especially high mail volume), machine capacity, and processing windows.

16. In phases two through five, Operations adjusted and reran the model several times to more accurately identify the optimum number of machines required for efficient processing of current mail flow and applying any adjustments in tracking methodology. The AFCS was added to the types of equipment to be assessed for possible removal in Phase 2, due to our observation of continued volume reduction. Phase 5 ran in June 2019 using the prior 12 months of data, excluding December, a month with especially high mail volume.

17. Headquarters has continued its customary daily monitoring of machine utilization. Beginning in March 2020, the COVID-19 pandemic significantly accelerated the decline in the volume of mail, primarily letter and flat mail, that has occurred in recent years. At the same time, package volume increased significantly. As the pandemic period has continued to affect the nation, this decline in letter and flat mail has continued, and package volume has continued to increase significantly. By May 2020, Headquarters Operations concluded based on our ongoing data monitoring and analyses that the letter and flat mail volume was highly unlikely to return to the significantly higher pre-March level, and that the increased package volume would likely continue. Letter and flat mail

6

processing machines in various facilities were operated far below the optimal capacity, and more package sorting machines and/or floor space was needed for processing the increased package mail volume. To operate more efficiently, the Postal Service needed fewer letter and flat sorting machines and more package machines and/or more workroom floor space for nonautomated package processing.

18. The fluctuation in types of mail was a major factor in the reduction analysis and had a significant effect on the Postal Service's mail processing equipment needs. Where a smaller number of letter or flat mail sorting machines are needed in facilities to efficiently process the volume of such mail, removing unnecessary machines frees up space for other package-processing machines, which may be staffed with employees who are no longer needed for running additional letter or flat mail sorting machines. Even where sorting machines are not yet available, floor space is necessary to accommodate the increased volume of packages.

19. In May 2020, in Phase 6 of the reduction initiative, the model was rerun to identify targets for reduction based on the significantly higher volume reductions in letter and flat mail and the increase in package mail. On May 15, 2020, Headquarters Processing Operations sent volume modeling and equipment reduction targets for various mail processing equipment to the area Vice Presidents for review and implementation. As in prior years, many machines were scheduled for removal during the summer months preceding August when mail volume is historically lower. Excess machines were either disassembled and physically removed, turned off and disconnected from the network, or temporarily tarped.

20. I am aware that Plaintiffs in this matter have alleged that sorting capacity was reduced more dramatically in some areas for reasons related to the November election. That is not correct. The selection of the number of machines to be reduced, in 2020 and in past years, has been based solely on ongoing analysis of mail volume and mail processing needs nationwide.

21. In 2020, approximately 711 letter and flat sorting machines have been reduced. The following chart reflects ongoing changes in equipment inventory from the beginning of Fiscal Years 2015 to August 2020. It shows that the total number of reductions during Fiscal Year 2020 (beginning October 1, 2019, and to end on September 30, 2020) was higher than during the preceding four fiscal years, but not as great as the number during Fiscal Year 2016. Fiscal Year 2016 was the year that the Postal Service initiated a plan to expand the operating window in the plants by adjusting the service standards. The plan known as the Operational Window Change (OWC) was necessary due to declining volumes and the need to improve efficiencies. The change in the 2016 operating plan reduced the need for letter and flat sorting equipment.

| Fiscal Year | Letter Machines | Flats Machines | Total Machines | Number Reduced |
|---|---|---|---|---|
| FY 2015 10-1-14 | 6,242 | 521 | 6,763 | |
| FY 2016 10-1-15 | 5,145 | 498 | 5,643 | 1,120 |
| FY 2017 10-1-16 | 4,946 | 500 | 5,446 | 197 |
| FY 2018 10-1-17 | 4,625 | 468 | 5,093 | 353 |
| FY 2019 10-1-18 | 4,533 | 459 | 4,992 | 101 |
| FY 2020 10-1-19 | 4,376 | 448 | 4,824 | 168 |
| 8-18-20 | 3,722 | 391 | 4,113 | 711 |

22. The May 2020 scheduled removals were in place under the leadership of former Postmaster General Megan Brennan. Postmaster General DeJoy played no role in developing the plans or implementing the plans. At the Postmaster General's directive of August 18, 2020, however, Headquarters suspended all removals of equipment until after the November election.

23. Headquarters continues to monitor mail volume and machine utilization daily to ensure that the Postal Service operates at a high efficiency level while maintaining a high level of service performance for our customers. Headquarters has anticipated that the volume of election mail, including ballots, will increase, as a greater number of voters use election mail due to COVID-19 concerns and various states' decisions to adjust laws and procedures relating to voting via mail. This anticipated increase in volume due to election mail represents only a small fraction of the normal volume successfully processed and delivered on a daily basis. If every eligible voter chose to vote by mail, this would add, approximately 160 million pieces of mail over a four-week period, or 40 million pieces on average per week. By comparison, the 2020 Census, which was successfully handled over an eight-week period, added 521 million pieces or an average of 65 million per week. Another means of evaluation is to compare the potential increase with the overall volume processed by the Postal Service to determine the overall potential impact. The average total pieces handled (TPH) for the months of April, May, June, and July of 2020 was 16.1 billion pieces per month. This is 21% less than the same period last year due to impacts of COVID-19. Adding 160 million pieces of election mail and assuming that each piece would be run twice, this still only equates to a 2% increase in total pieces handled. Based on the current equipment set of 3,722 letter sorting machines

running at 21,000 pieces per hour over 24 days in the month of October preceding the election, this equates to only 10 minutes per day per machine of additional processing time needed to process the Election ballots.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed at Washington, D.C. on the 8th day of September, 2020

JASON DeCHAMBEAU