# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| 1199SEIU UNITED HEALTHCARE WORKERS EAST, | No. 1:20-cv-24069-RNS |
| Plaintiff, | Hon. Robert N. Scola, Jr., District Judge |
| v. | |
| LOUIS DEJOY, Postmaster General and Chief Executive Officer of the United States Postal Service; and the UNITED STATES POSTAL SERVICE, | Hon. Jonathan Goodman, Magistrate Judge |
| Defendants. | |

# PLAINTIFF'S EXHIBIT 31

October 23, 2020 Letter from U.S. Attorney's Office for S.D.N.Y. to Hon. Victor Marrero filed in *Jones, et al. v. United States Postal Service, et al.*

**SUPPLEMENTARY DECLARATION OF JONATHAN MANES**

**OCTOBER 27, 2020**



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

<small>86 Chambers Street, 3rd Floor<br>
New York, New York 10007</small>

October 23, 2020

**VIA ECF**

Hon. Victor Marrero, United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

    Re:    *Jones* et al. *v. United States Postal Service* et al., No. 20 Civ. 6516 (VM)

Dear Judge Marrero:

    This Office represents the defendants in the above-referenced case. We write respectfully pursuant to the Court's September 25, 2020 Order, ECF No. 57 (the "Order").[1] In accordance with paragraph 6 of the Order, Defendants submit herewith:

(1) The weekly service performance update provided by the United States Postal Service ("USPS") to Congress on October 22, 2020 (pertaining to First-Class Mail, Marketing Mail, and Periodicals) (Exhibit 1), as well as a relevant USPS press release (Exhibit 2);

(2) A report reflecting the weekly national scores and service variance for Presort First-Class Mail (Overnight, 2-Day and 3-5 Day) and Single-Piece First-Class Mail (2-Day and 3-5 Day), for the same period of time covered by the October 22, 2020 Congressional update[2] (attached hereto as Exhibit 3);

(3) As discussed in more detail below, a summary of any and all data and information collected by USPS Headquarters regarding USPS's handling of Election Mail at the Headquarters level and compliance with USPS policies regarding Election Mail, USPS recommended practices regarding Election Mail, and the terms of the Court's September 25, 2020 Order specifically pertaining to Election Mail.

---

    [1] The information contained in this letter has been provided to this Office by the United States Postal Service, to be provided to the Court to comply with Defendants' obligations under the Order.

    [2] The first column in each category shows the overall service performance score; the Percent within +1 day, +2 days, and +3 days columns show the performance one day later, two days later, and three days later (service variances).

Case 1:20-cv-04096-EMC Document 50 Filed 10/28/20 Page 3 of 6
Case 1:20-cv-03516-VM Document 91 Filed 10/26/20 Page 3 of 5

Page 2 of 5

### *Summary of Data and Information Regarding Election Mail Handling and Compliance*

To date, USPS Headquarters has compiled three categories of data or information relating to its handling of Election Mail and compliance in the field with Election Mail policies and practices: (1) All Clear Reports, (2) Advanced Volume Reports, and (3) Election Mail Service Reporting.[3] As mentioned in previous reports (ECF Nos. 86, 90) and explained further below, USPS has recently completed the validation of data associated with certain subsets of Election Mail, and now refers to that validated data for internal purposes (and will report validated data to the Court moving forward).

1. **All Clear Reports**

As USPS has previously described to the Court, *see* ECF No. 28 ¶ 19, USPS uses daily "all clears" to ensure that all Election Mail is accounted for within the system. In the all clear process, in-plant support personnel in processing or delivery units use a checklist to confirm that mail scheduled or "committed" to go out that day has gone out, and anything committed for the next day is at the front of the line.[4] Personnel conducting all clears consult Election Mail logs, and also check all locations within the facility (*e.g.*, processing equipment) to ensure that all pieces of Election Mail in the facility's possession are in the right location.

All Clear Reports help USPS identify facilities that require additional follow-up to enforce their compliance with the daily all clear policy. Each USPS processing plant, delivery unit, and reporting retail unit is required to certify, through an online system, its all clear performance every day. Reports showing USPS's "all clear" reporting results for the time period from October 3 to 9, 2020, are attached hereto as Exhibit 4, broken down by geographic Division (for mail processing plants) and by geographic Area (for delivery/retail units).

In these reports, the "Total Count" column totals the number of facility reports expected each week (in other words, it reflects the number of facilities multiplied by seven); "No Response" reflects how many expected reports were not submitted; and "Non-Compliant" indicates that a facility did not clear all of its Election Mail that day. It is important to note that a "Non-Compliant" certification does not necessarily indicate that a facility failed to properly comply with the all clear process on a given day; it indicates primarily that the facility located some Election Mail that it did not clear that day, often for reasons unrelated to any operational

---

[3] As a general matter, USPS collects an enormous amount of raw data regarding its products and operations, some of which would incidentally bear on the performance of Election Mail. For example, in accordance with paragraphs 6(a) and (b) of the Order, USPS is providing weekly data updates to the Court regarding the service performance of all First-Class Mail, Marketing Mail, and Periodicals, which encompasses but extends far beyond Election Mail. USPS understands paragraph 6(c) of the Order as referring to data and information that USPS Headquarters customarily collects specifically relating to Election Mail, all of which is discussed herein.

[4] Many, but not all, retail units are also required to certify their all clear performance each day. Some very small retail units are not required to certify their all clear performance.

deficiency. As discussed above, the all clear process is principally aimed at making sure that all Election Mail within a facility is accounted for, and anticipates that some Election Mail (for example, Election Mail received too late in the day or night to process) may be located during a facility-wide check and committed to go out at the front of the line the next day.

If a facility submits no "all clear" response on a given day, USPS Headquarters alerts the relevant District Manager or Division director to follow up. If a particular facility exhibits a pattern of non-responses, USPS may take a corrective action.

2. **Advanced Volume Reports**

Advanced Volume Reports help USPS estimate the amount of Election Mail, primarily that which is sent as Marketing Mail, that is advanced. Using the Mail Condition Visualization system, which is USPS's system of record for mail processing conditions, USPS can count the number of mailpieces that receive their final processing scan (meaning that they have gone through processing and are about to be sent to delivery units) prior to their expected date of delivery. In other words, USPS is able to detect mailpieces that are processed and readied for delivery ahead of schedule, when compared with their expected delivery standard, as a consequence of USPS's policies of advancing mail (especially Election Mail).[5] It is important to note that Advanced Volume Reports set forth absolute numbers without denominators, and as such may not fully depict USPS's general performance with respect to Election Mail in a given week (*e.g.*, what *percent* of Election Mail USPS received and advanced in a given week).

For the time period from October 10 to 16, 2020, USPS data shows that 11,939,371 pieces of Election Mail were advanced. This data represents a 54.15% decrease over the previous week, in which 26,040,395 pieces of Election Mail were advanced.

3. **Election Mail Service Reporting**

USPS has recently completed the validation of data pertaining to three subsets of Election Mail, which USPS will now use for internal purposes (and will therefore report to the Court moving forward). The three relevant subsets of Election Mail are: (1) mailpieces that are electronically identified on "entry" as Election Mail and that are also trackable using USPS's Intelligent Mail Barcode ("IMB") feature; (2) Election Mail that bears service type ID ("STID") codes embedded within the IMB specifically identifying the Mail as ballots outgoing to voters; and (3) Election Mail that bears STID codes that specifically identify the Mail as ballots incoming from voters.[6]

---

[5] Generally speaking, the vast majority (approximately 98%) of mailpieces that receive their final processing scan are delivered the next day. Due to a number of factors, including mail being missorted, missequenced, or natural disasters, a very small fraction of mail that has received its final processing scan may be delivered a day later.

[6] As USPS has previously noted, because state and local election officials control all aspects of the design of Election Mail, those officials are responsible for choosing whether to make use

Only a subset of Election Mail is sent using IMBs and ballot-specific STID codes, and USPS does not currently have data to specifically track and analyze the service performance of Election Mail that does not utilize those features. Therefore, the Election Mail Service Reporting described in this section is not a representatively accurate measurement of the service performance of all Election Mail handled by USPS. In addition, each of the Election Mail Service figures reported this week (and moving forward) tracks the performance of Election Mail within USPS's operational network, which is the mailpiece's time between its first and last processing operations. These service performance figures do not incorporate the "First Mile," which represents the time from acceptance of the mailpiece (*e.g.*, from a collection box or retail unit) to the first processing operation, or the "Last Mile," which tracks mailpieces from their last processing hit to delivery. "First Mile" and "Last Mile" data are not incorporated into the Election Mail Service figures for two principal reasons: first, those two measurements are derived from statistically valid sampling at the aggregate product level (*e.g.*, sampling of *all* First-Class Mail), which cannot practicably or reliably be adapted to specifically track Election Mail; and second, because Marketing Mail, including Election Mail entered by election officials as Marketing Mail, does not have a "First Mile" measurement.

Lastly, USPS considers this Election Mail Service Performance information to be confidential and not subject to public disclosure under 39 U.S.C. § 410(c). In addition to not being a representatively accurate measurement of the service performance of all Election Mail handled by USPS for the reasons described above, it is also a subset of First-Class Mail and Marketing Mail data that is more disaggregated than is otherwise publicly shared. Nor does the USPS otherwise report on a combination of a subset of First-Class Mail and Marketing Mail in this manner in other contexts. As such, this information is commercial in nature and would not be disclosed under good business practices. USPS is providing the information pursuant to paragraph 6 of the Order, but reserves the right to assert the confidential nature of this information in other contexts.

Bearing these limitations in mind, USPS provides, herewith, processing scores for the three subsets of Election Mail described above. These figures are included on Exhibit 4, attached, for the week ending October 16, 2020. In addition, USPS is providing validated figures for all three subsets of Election Mail for each of the previous weeks for which USPS has reported Election Mail Service Performance information to the Court (from the week ending September 18, 2020, on). The validated figures for the non-ballot Election Mail category vary slightly from the non-validated figures that USPS previously reported to the Court. This difference is a result of the timing of the data pulls, which may change performance scores based on additional events/updates received.

In addition to the types of data and information discussed above, USPS is currently collecting additional data as part of ongoing attempts to develop new techniques and metrics related to Election Mail, including its ballot cancelation performance, and other useful metrics.

---

of USPS's Intelligent Mail Barcode and ballot-specific STID codes for Election Mail. *See, e.g.*, ECF No. 28 ¶ 4. USPS does not charge an additional fee for these features; in fact, election officials may receive a discount for opting to use the IMB.

Attempts to gather and interpret this data are still in the early stages, and the data is not currently reliable enough for USPS to use to track its performance. As such, this data is not currently susceptible to analysis. If USPS is able to develop these new metrics for use in connection with the November 2020 Election Season, it will supplement its reporting to the Court.

***

Finally, on October 14, 2020, USPS distributed the Supplemental Guidance Document approved by the Court on October 10, 2020 (ECF Nos. 85-1, 87) to nearly 50,000 USPS employees by electronic mail, as indicated in the Document. *See* ECF No. 85-1 at 1; Order ¶ 9. The email distributing the Document instructed each recipient to follow an embedded link to an electronic certification page. USPS established this method for electronic certification in order to comply with the Court's directive to "certify . . . whether all USPS managerial staff members have certified that they have read, reviewed, and understand the Supplemental Guidance Document." Order ¶ 9. As of the filing of this update, 44,599 USPS employees, comprised of primarily managerial employees,[7] have electronically certified that they have read, reviewed, and understand the Supplemental Guidance Document. This represents an approximately 90 percent response rate thus far.

After the initial distribution of the Supplemental Guidance Document on October 14, notices have been sent to USPS officers, on at least a daily basis, identifying individuals in their organizations who have not yet completed the certification, so that the officers can continue to remind staff to review and certify until certification is complete. Reminders are being sent by email and have been made during meetings and webinars. USPS intends to update the Court weekly as to its ongoing compliance with paragraph 9 of the Order.

Respectfully,

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By: /s/ Rebecca S. Tinio
REBECCA S. TINIO
STEVEN J. KOCHEVAR
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2774/2715
E-mail: rebecca.tinio@usdoj.gov
steven.kochevar@usdoj.gov

---

[7] Employees on the Executive and Administrative Schedule ("EAS"), to whom the Supplemental Guidance Document was distributed, include some non-managerial staff members.