```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2
                     CASE NO. 20-24069-CV-SCOLA
3
     1199SEIU UNITED HEALTHCARE
4    WORKERS EAST,                        Miami, Florida

5              Plaintiff(s),
                                     November 2, 2020
6         vs.

7    Louis Dejoy, Postmaster General
     and Chief Executive Officer of the
8    United States Postal Service; and
     the UNITED STATES POSTAL SERVICE,
9
               Defendant(s).
10   -----------------------------------------------------------

11                    STATUS CONFERENCE
             BEFORE THE HONORABLE ROBERT N. SCOLA, JR.
12                 UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14   FOR THE PLAINTIFF(S):  David J. Bradford, Esquire
                            Ashley M. Schumacher, Esquire
15                          Jenner & Block, LLP
                            353 North Clark Street
16                          Chicago, Illinois 60654

17                          Steven Art, Esquire
                            Loevy & Loevy
18                          311 North Aberdeen Street
                            Chicago, Illinois 60607
19
                            Igor Hernandez, Esquire
20                          2525 Ponce de Leon Boulevard
                            Suite 300
21                          Miami, Florida 33134

22

23

24

25
```

```
 1

 2   APPEARANCES (Cont.):

 3

 4                        Jonathan Manes, Esquire
                          Roderick & Solange
 5                        MacArthur Justice Center
                          160 East Grand Avenue, Sixth Floor
 6                        Chicago, Illinois 60611

 7                        Nayiri K. Pilikyan, Esquire
                          Jenner & Block, LLP
 8                        633 West Fifth Street
                          Suite 3600
 9                        Los Angeles, California 90071

10

11   FOR THE DEFENDANT(S):  Joseph E. Borson, Esquire
                          United States Department of Justice
12                        P.O. Box 883
                          Washington, D.C. 20044
13

14

15   REPORTED BY:         Tammy Nestor, RMR, CRR
                          Official Court Reporter
16                        400 North Miami Avenue
                          Miami, Florida 33128
17                        tammy_nestor@flsd.uscourts.gov

18

19

20

21

22

23

24

25
```

```
 1   The following proceedings began at 9:00 a.m.:

 2          THE COURT:  We are here for United Healthcare Workers

 3   East versus Louis Dejoy, Postmaster General, as well as the

 4   U.S. Postal Service.

 5          Who is here on behalf of the plaintiff?  And if you

 6   could, identify yourself and the rest of your team.

 7          MR. BRADFORD:  Good morning again, Your Honor.  David

 8   Bradford on behalf of the plaintiffs.  With me as co-counsel is

 9   Jonthan Manes of the MacArthur Justice Center, Steve Art of the

10   Loevy & Loevy firm, Igor Hernandez, Ashley Schumacher, Nayiri

11   Pilikyan, and I believe we have a client representative and

12   perhaps more present as well.  I see Katie Roberts.  Thank you,

13   Your Honor.

14          THE COURT:  All right.  Thank you.

15          Who is here on behalf of the defendants?

16          MR. BORSON:  Good morning, Your Honor.  Joseph Borson

17   from the U.S. Department of Justice on behalf of all the

18   defendants.

19          THE COURT:  Good morning.

20          I saw and read the plaintiff's status report.  Tell me

21   if~anything has happened since then, or maybe you can summarize

22   that and tell me what you need me to do.

23          And I know that you referred to another order of

24   another federal judge, but I also, I, the people, we found

25   there's an order from Judge Sullivan in his case in Washington
```

1   that specifically addresses the Princeton postal office.

2        MR. BRADFORD:  That's correct.

3        THE COURT:  There's two other federal judges that are

4   opining on this matter.  Tell me what's happening and what you

5   want me to do.

6        MR. BRADFORD:  Your Honor, there is two sets of

7   issues.  One pertains to the Princeton facility where I do

8   believe that Judge Sullivan has taken steps with respect to

9   that matter.  And for that reason, we would not ask Your Honor

10  to do anything further with respect to that matter so that we

11  don't have two federal courts addressing the same facility.

12       And I'm happy to come back and talk about what

13  occurred there and what we understand to be occurring, although

14  it might be helpful as well to hear an update from the postal

15  service about that.

16       Our primary concern this morning relates to the

17  recency or lack of recency of the all clear reports which I

18  think we all contemplated would tell us as of this morning

19  whether there had been all clears for the ten largest counties

20  as of the close of business on Sunday.  I believe the Court's

21  order stated it would be through Sunday.  And I think all our

22  expectation was that by early this morning, we would have the

23  all clear reports through yesterday.

24       In fact, apparently the timing of the publication of

25  those reports is that they don't get published until 10:00 a.m.

1    eastern time for the all clears for the preceding day.  So what

2    we received this morning is the most recent information the

3    postal service had available, but it would be as of yesterday

4    morning, Sunday morning, as opposed to as of this morning.

5          So with respect to that information, we would ask that

6    after 10:00 today, when the all clears through yesterday are

7    published, that they be shared with us on a prompt basis so we

8    have an opportunity to address any issues that are identified

9    in those reports.  We would ask for the same thing tomorrow

10   because that would essentially take us through today in terms

11   of the all clear reports.

12         Turning to the substance of the all clear reports,

13   there were several exceptions of noncompliance or nonresponses

14   as of yesterday morning which have been explained to us as of

15   this morning with the exception of a nonresponse for the Miami

16   plant.  And we are hoping that we can receive an explanation

17   this morning as to why the Miami plant was reported

18   noncompliant as of yesterday.  There may well be a good

19   explanation, but we don't have that.

20         Perhaps that's a good place for me to stop.  I'm,

21   again, happy to turn to the Princeton facility as well and give

22   Your Honor more detail on what's occurred there from our

23   perspective.

24         THE COURT:  All right.  Mr. Borson.

25         MR. BORSON:  Thank you, Your Honor.  Would you prefer

1    that I address the all clears or the Princeton facility first?

2           THE COURT:  I mean, it seems like there's a lot.  I

3    mean, I just watched the news.  You see a lot of postal police

4    swarming all over there.  I mean, I can't believe there's

5    anything more that could be done after that.  So I think the

6    other issues are more pressing.

7           MR. BORSON:  I think that's probably right.  I think

8    the postal inspectors and postal inspector generals are on the

9    scene and have been on the scene since the beginning of the

10   weekend or since Friday.

11          In terms of the all clears, I just wanted to correct

12   one issue that Mr. Bradford raised.  It's not an issue that the

13   all clears are done and they are just not being processed,

14   particularly for the processing plants.  The processing plants

15   are still running through -- they work at night mostly.  They

16   get the mail from the retail units that close at the end of the

17   business day.  The retail units bring it to the processing

18   plants.  The processing plants generally work through the

19   night.  So that's still ongoing.

20          So the information we have from yesterday is the most

21   recent, but it's the most recent simply because there's nothing

22   to update.  The processing is still going on from today.

23          My understanding is that there are some retail all

24   clears that would normally be produced late, like late tonight,

25   but since there's no retail on Sunday, those reports aren't

```
1    available.  So we have produced the most recent data that we

2    have.

3            As counsel noted, there were issues in some of these

4    reports, most of which were related to political mail as

5    opposed to election mail, so political mail being the

6    advertisements you get from political candidates as opposed to

7    ballots.  The ballots have been cleared.

8            I will follow up about the Miami facility.  I don't

9    have an update on that yet, but once I get it, I'll provide it

10   to the plaintiffs.  But, again, I think that they are

11   responding to that appropriately with the information that they

12   have.

13           In terms of providing additional reports, I guess a

14   couple of points on that.  So first, it is burdensome to

15   produce these reports in this format.  We have basically one of

16   the people working in the postal service's election mail

17   coordination office who is more or less spending most of his

18   time pulling these reports together for production to

19   plaintiffs in these cases as opposed to doing data analysis and

20   working on resolving these issues.  So there is some costs in

21   sort of doing these types of data requests that the plaintiffs

22   request.

23           And then, I guess, sort of more fundamentally --

24           THE COURT:  And how many employees are in the data

25   center?
```

```
 1              MR. BORSON:  In the election mail office that's

 2    working on this, I'm not sure the full number, but I know the

 3    person who does this.  It's only one person who pulls these

 4    reports, and he reports up to the postal service's election

 5    mail coordinator.

 6              THE COURT:  Okay.

 7              MR. BORSON:  And at this point I'm not even sort of

 8    getting the -- getting people familiar with the system might

 9    take some time given it's the Monday before the election.

10              But, I guess, more fundamentally, there's sort of a

11    couple of other issues.  First, as you noticed in Judge

12    Sullivan's case, last night he issued an order requiring

13    instructions go out to all retail units and all processing

14    units conveying the importance of following all of these issues

15    and procedures and extraordinary resources that are in place.

16    So that's --

17              THE COURT:  Hold on one second.

18              Mr. Bradford, I just saw your name pop up in a chat.

19    I don't know whether you think you are chit-chatting only with

20    your people.  I didn't see it because it went and gone.  But

21    those are all public, so if your people are chatting, I don't

22    care, but I just want you know it's not a private chat.

23              Go ahead, Mr. Borson.

24              MR. BORSON:  So they are already in the court order

25    from last night about emphasizing the importance of these
```

1  extraordinary resources to resolve ballots that are still in

2  process right now.  And the instruction that is complying with

3  that order went out last night and are going out again this

4  morning.  So a lot of that is already being taken care of

5  pursuant to Judge Sullivan's order from last night.

6        So it seems like what the plaintiffs are asking for is

7  producing data that is burdensome to produce because it takes

8  people away from fixing the problem, would require -- it's just

9  not clear to us for what end the data would go to because if

10  there's an issue that the postal service is working through, we

11  have every confidence and every expectation they will be

12  working through and solving any of the problems.

13        It seems like the only purpose of getting this data

14  would then be for further follow-up and further explanation

15  which would just take those people away from actually trying to

16  solve the problem to brief me so that I can brief you.

17        So in that respect, we understand and share the goal

18  of ensuring that all of these facilities clear all mail and

19  move it most expeditiously as possible.  It's not clear that

20  the relief they are seeking in this status report is the best

21  way to effectuate it.

22        THE COURT:  As I understand, what they are asking for

23  is at 10:00 today, presumably you are going to receive the all

24  clear from yesterday, and then they want you to notify them by

25  1:00 p.m. today.  I guess that would tie up that one person in

1    the data center who will do an analysis of the ten most

2    populous counties in Florida to see if there are any issues of

3    noncompliance in those ten counties.  You would notify them by

4    1:00.

5         So other than the burden that would put on that one

6    employee, is that going to conflict with anything the other

7    judges have ordered?

8         MR. BORSON:  I don't -- it wouldn't conflict with

9    anything.  That particular provision wouldn't conflict with

10   anything other than just adding on another burden on that.  I

11   guess it's sort of the question of once that data comes in,

12   then what's the next step.

13        So if there's no issue, then there's no issue and

14   that's fine.  If a plant found a problem, and this is designed

15   to help plants surface problems, then I think we would want the

16   plant to be focused on fixing that problem as quickly as it

17   could as opposed to necessarily briefing me so that I can

18   explain to plaintiffs what the issue is.

19        That's really the concern that we have there is that

20   if there are any issues, and obviously we hope there aren't, we

21   really want the people focused on fixing those rather than, you

22   know, briefing me, briefing you, bringing everyone back here.

23   That to me seems where the real distraction would be that

24   wouldn't necessarily help solve the problem.

25        THE COURT:  I don't know.  That would be like saying,

```
 1    look, it would be really distracting to have somebody go look

 2    through the postal offices and see if there's any mail just

 3    piled up there and ballots are lost within the piles of mail

 4    because then we would have never learned about the 48 ballots

 5    that were at Princeton.

 6            So, I mean, something has to done to have some

 7    oversight to make sure that all these ballots to the best you

 8    can reasonably and feasibly are delivered to the election

 9    bureau by 7:00 p.m. now tomorrow.

10            So, Mr. Bradford, I want to make sure I understand you

11    correctly.  So you, as of right now, you want me to order them,

12    once they get the all clear of ten, then that's why you are

13    waiting until 1:00 to give it to you, so that that data analyst

14    has time to go through the ten most populous counties, and then

15    you will find out at 1:00 what that information is.  And then

16    you want me to have a status conference later today.  And then

17    if you think there's something that I can order at 5:30 today

18    that's going to accomplish those ballots getting to the

19    election bureau by 7:00 p.m. tomorrow, that's what we are going

20    to do.  Am I understanding you correctly?

21            MR. BRADFORD:  Yes, with respect to the all clears for

22    the plants, that is correct.  And if the Court prefers to leave

23    the status conference optional until we determine if there is

24    or is not a problem, we would obviously be guided by the

25    Court's preference.  We obviously view it as very important to
```

```
1    have the type of access to the Court that Your Honor has been

2    so gracious in providing whether that's scheduled and canceled

3    or we request it, Your Honor.

4            But there is a separate issue which has just been

5    identified with respect to the retail facilities.  And I

6    apologize for the group chat with respect to this.  But as we

7    understand what counsel has just related, apparently there will

8    not be any all clears for retail facilities until tomorrow.

9            THE COURT:  Tell me what a retail facility is.

10           MR. BRADFORD:  Certainly.  Again, Mr. Borson could do

11   a better job than I, but as I understand, a retail facility is

12   any facility that you or I might walk into and transact

13   business with a post office employee and deposit mail.

14           As Your Honor, I think, appreciates, with respect to

15   the forwarding of election mail to the election authorities,

16   with this implementation of hub and spoke starting today and

17   tomorrow, we don't expect that ballots are going to be going to

18   processing plants.  The order last week and the agreement

19   contemplates that they would stay primarily within the retail

20   system.

21           So if a particular postal facility or retail facility

22   has a ballot, rather than sending it off to a processing

23   facility, it should be sending it to the retail facility

24   responsible for delivering it directly to the election

25   officials.
```

1          So particularly starting today and tomorrow, whether

2    there are unaccounted for ballots in a retail facility -- and I

3    would indicate, for example, Princeton is a retail facility as

4    I understand it, not a processing plant.  But it apparently sat

5    unattended for five days and nobody even realized that mail was

6    piling up there.

7          So we are more interested now in the all clears for

8    the retail facilities in the ten largest counties.  We

9    understand now from counsel that information may not be

10   published until tonight.  Whenever it's published or first

11   available and allowing for reasonable time to assemble the

12   information, we think it critical that that information be

13   provided to us and we do have an opportunity to be heard if

14   there are problems for which there are no explanations.

15         There were problems identified in the reports this

16   morning, for example, for Orlando where we were advised

17   verbally that those don't relate to ballots but to other types

18   of political mail.  We are not pursuing relief.  I think on all

19   of this, if we received a reasonable verbal explanation from

20   the postal service as to why there is noncompliance or an

21   exception, we are not going to take the Court's time with it.

22   But if there is no explanation and there is noncompliance, we

23   think it critical that we address that before Your Honor at the

24   very first opportunity.

25         THE COURT:  I'm trying to pull up your proposed order.

```
 1              MR. BRADFORD:  So, yeah, I believe the timing in our
 2    order contemplated that there would be further retail all
 3    clears as of this morning.  And unless Mr. Borson corrects me,
 4    it sounds like there won't be any until at least late tonight
 5    or tomorrow morning.
 6              MR. BORSON:  That's my understanding just given that
 7    most post offices are closed on Sundays.
 8              THE COURT:  Okay.  So I don't see the words retail
 9    facility in your proposal.  Do you want to add language or
10    amend the order --
11              MR. BRADFORD:  Yeah, I think paragraph one refers to
12    each facility and processing center, so we could insert the
13    word retail before facility, but I hope that it's understood
14    that each facility encompasses retail facilities.  And counsel
15    has been providing all clears for retail facilities, so I think
16    that understanding is clear.
17              THE COURT:  All right.
18              MR. BRADFORD:  I think the -- I mean, it may still
19    work for our order that if there are additional all clears as
20    of 10:00 a.m. this morning or tomorrow morning or, frankly,
21    whenever they are generated, that they should be provided
22    within a matter of several hours with an explanation for any
23    facility that fails to report or the report is noncompliance.
24    That should perhaps include any plants.  But, frankly, at this
25    point, we are more concerned with the retail facilities except
```

```
 1   for the Miami-Dade plant where we are still expecting an
 2   explanation.
 3            THE COURT:  Okay.  Are you all available for another
 4   status conference at 5:30 today?
 5            MR. BRADFORD:  Yes, Your Honor.
 6            MR. BORSON:  Yes, Your Honor.
 7            THE COURT:  I am going to hold off on deciding, if we
 8   are going to meet tomorrow, what else can be done.  Let's see
 9   what the information you receive today is.  Take it one step at
10   a time.
11            I will fidget around with your proposed order and get
12   that order out in the next few minutes.  But right now we will
13   plan on meeting at 5:30 today.
14            And, Christian, are you still here on the line?
15            IT TECHNICIAN:  Yes, Your Honor, I'm still here.
16            THE COURT:  Can we use the same link at 5:30, or do we
17   need to use a new one?
18            IT TECHNICIAN:  We can use the same one.  I will keep
19   it active.
20            THE COURT:  Okay.  So, everybody, we will use the same
21   link, and we will reconvene at 5:30 this afternoon.  Okay?
22            MR. BRADFORD:  Thank you so much, Your Honor.
23            MR. BORSON:  Thank you, Your Honor.
24            THE COURT:  Thank you all.  Have a great day.  We will
25   be in recess.
```

```
 1              (The hearing adjourned at 9:20 a.m. and resumed at
 2       5:30 p.m.)
 3              THE COURT:  Let's call this a continuation of this
 4       morning's hearing.
 5              I have the report that was filed by the plaintiff.  I
 6       had it.  Okay.  Now I have it again.
 7              So, Mr. Bradford, let me hear from you first.
 8              MR. BRADFORD:  Certainly, Your Honor.  We appreciate
 9       all the reports that have been forwarded to us.  And insofar as
10       the all clear reports where the plants are concerned, it
11       appears there are no exceptions.
12              We are looking forward to receiving the all clear
13       reports with respect to the retail operations, and we are
14       hoping that since those would be as of approximately 10:00 this
15       morning, that it would be possible to receive those before
16       tomorrow morning so that if there are issues, they can still be
17       addressed before the day is over.
18              So we have a request which we have made to the postal
19       service to provide us with those reports sooner than tomorrow
20       morning.
21              And then separately, I would like to return to the
22       topic of the Princeton post office facility, but it might make
23       sense to address the all clear issue first.
24              THE COURT:  Okay.  So my understanding is, in terms of
25       the distribution plants, that they are working overnight, and
```

1   that's why the report for the previous day is not ready until

2   10:00 a.m.  So you have received that report from Sunday, since

3   today is Monday, and your position is that yesterday the retail

4   facilities were closed so they are not really included in that

5   report from 10:00 a.m.  And because they don't work at night at

6   the other facility, the reports that they generate should be

7   generated earlier and should be made available to you like

8   first thing in the morning so that way, if there's a problem,

9   you have all day tomorrow up until 7:00 p.m. to fix it.

10          MR. BRADFORD:  That is correct, Your Honor.  But also,

11   if I understand it correctly, there should be additional all

12   clear reports that we still have not received from the retail

13   operations that should be, at least as to the ten counties,

14   that should be available today with respect to whatever all

15   clear was done this morning.

16          So as I understand it, even though they weren't open

17   this morning, there would still be an all clear assessment as

18   of this morning which we have not yet received.

19          THE COURT:  Let's start with that finite issue about

20   the all clear reports from this morning from retail facilities.

21   What is the story with that, Mr. Borson?

22          MR. BORSON:  So I believe Mr. Bradford is wrong about

23   the timing for the retail.  So, as Your Honor noted correctly,

24   the operation plants run overnight.  They do their reports at

25   10:00 a.m.  The retail and processing units, they are post

```
 1   offices generally, so they are open during the day.  They will
 2   do their reports late tonight.  So there are no outstanding
 3   reports right now.  Plaintiffs have everything that exists.
 4        There will be a report that will be entered by the
 5   facilities late tonight.  So currently the court order says
 6   it's due at 1:00 tomorrow.  We can work to get it to the
 7   plaintiffs first thing in the morning.
 8        THE COURT:  Give me a time.  9:00?
 9        MR. BORSON:  9:00 seems fine, Your Honor.
10        THE COURT:  Okay.  So the other report that comes from
11   the overnight, that's still going to be 1:00?
12        MR. BORSON:  That's still going to be 1:00.  That
13   still takes them a few hours to generate.
14        THE COURT:  From the retail facilities, those reports
15   for Florida will be produced to you by 9:00.
16        And do we want to set a hearing at 11:00 so that if
17   there are any issues that come up at the 9:00, that gives you a
18   couple hours to see if you can fix them, and if not, I'm ready
19   to go at 11:00 to see if there's anything we can do in the
20   remaining eight hours?
21        MR. BORSON:  Your Honor, I'm currently scheduled to
22   appear before Judge Sullivan in some of these other cases at
23   11:00.  If 11:00 is best, I can see if one of my colleagues can
24   cover that hearing but, otherwise, if we could do it --
25        THE COURT:  How about 10:30?
```

 1           MR. BORSON:  10:30 should work.  We should hopefully

 2   have the information.  If there are any issues from that

 3   report, it will take us a little bit of time to run that down,

 4   so I think 10:30 will be fine.  But it is possible there still

 5   might be one or two facilities we might need to confirm.  Or we

 6   can do 11:00, and I can have a colleague cover my other

 7   hearing.

 8           THE COURT:  You tell me.  I think, A, there's a chance

 9   there won't be any issues at 9:00, and B, there's a pretty good

10   chance that, if there are issues, there's only going to be a

11   very small number that you can at least know what's being done

12   between 9:00 and 10:30.  And if at 10:30 we need more time,

13   then I will do it at 11:30 or some other time.

14           MR. BORSON:  That sounds fine.  10:30 should be good,

15   Your Honor, then.

16           THE COURT:  So that resolves the issue of retail

17   facilities reports.  That will be provided at 9:00 a.m.

18   tomorrow.  And then we will have a hearing at 10:30 a.m.,

19   another status conference, to see if there is any other actions

20   that need to be taken.

21           So do you want to now go to the Princeton office

22   issue?

23           MR. BRADFORD:  Yes, Your Honor.  Thank you.

24           With respect to the Princeton office, just a few

25   minutes before this hearing began, we received a copy of the

defendant's status report to Judge Sullivan in the District of
Columbia with respect to that matter which we advised Your
Honor this morning had been raised in that proceeding, and
Judge Sullivan required status updates.

I would note that counsel had explained to Judge
Sullivan yesterday that there were also proceedings before Your
Honor and that Your Honor might also be asked to address this.
We refrained from doing that this morning to avoid any kind of
confusion of having two different courts address that
situation.

But the report, which we have just forwarded to
chambers and we will file promptly, states that they determined
that there was a backlog of 180,000 delayed mail pieces that,
not only were there 47 ballots discovered on Friday, there were
10 more ballots discovered Saturday and 5 on Sunday.  It goes
on to state that no additional ballots were found today.  And
it recounts the resources that are being applied to essentially
go through the backlog of mail there and concludes by saying
that the post office has -- postal service has committed
additional staff to the facility to clear any backlog and
address any other concerns.

What it does not say is that there is an effort under
way to determine definitively whether there are still
additional ballots among the 180,000 pieces of mail.

And while we appreciate the resources committed to

1    getting that mail delivered, we think it's absolutely

2    imperative that all effort be focused in the next 24 hours on

3    determining if there are any completed ballots, votes that have

4    actually been cast, that are still in that office.

5          To the extent that there are ballots that were on

6    their way to voters, obviously it's too late at this point to

7    do anything with that.  Presumably the voters know that they

8    did not get their ballots.  But to the extent that people

9    believe they have voted and mailed their ballots what would now

10   be some time ago, we would ask for some type of certification

11   that, in fact, the mail has been at least surveyed from the

12   standpoint of trying to determine if there are any additional

13   ballots that are still undiscovered.

14         THE COURT:  Okay.  But, I mean, I got to believe that

15   when they have inspectors there and other people looking

16   through the mail, that's pretty much the only thing they are

17   looking for is ballots.

18         So tell us about Princeton, Mr. Borson.

19         MR. BORSON:  Yes, Your Honor.  So, again, I think

20   Mr. Bradford accurately reflected what was found.  The postal

21   service has, since Friday, I believe, been working exhaustively

22   to sort through this mail.  They put an additional 35 employees

23   and managers including senior people from the USPS leadership

24   team.  There's Postal Inspector General individuals there.

25   There's postal inspection service who are sworn officers, I

1    believe.  The primary focus is looking for ballots as well as

2    getting the rest of the mail out there.

3           So I don't know if there are magic words Mr. Bradford

4    is looking to us to utter, but they are doing everything that

5    is possible to sort through this mail.  They have looked and

6    have not found any more ballots.

7           Obviously, looking for ballots is their top priority

8    as well as resolving this.  So, I mean, given the amount of

9    resources and the focus of the postal service in this area by

10   employees, by senior officials, by law enforcement officers, I

11   think we can state pretty confidently that everything that can

12   be done is being done here.

13          THE COURT:  Okay.  So give me some language,

14   Mr. Bradford, that you want me to include.

15          You're muted.

16          MR. BRADFORD:  I apologize, Your Honor.

17          That the postal service will prioritize and use all

18   possible effort between now, and I'm not quite sure what time

19   tomorrow, but certainly by 1:00 p.m. tomorrow to ascertain

20   whether there are any ballots at that facility and to cause

21   those ballots to be delivered to the election offices to which

22   they are directed.

23          MR. BORSON:  Your Honor, I guess in response to that,

24   that language just seems unnecessary because that is what the

25   postal service will be doing.  That's what the postal service

```
 1    has been doing.

 2          And I sort of appreciate Mr. Bradford's attempts or

 3    focus on getting these ballots out.  I think that's something

 4    that everyone shares.  But I just think that would be

 5    memorializing what's already been going on in a way that's not

 6    actually necessarily going to be constructive.

 7          MR. BRADFORD:  Your Honor, to respond to that --

 8          THE COURT:  Wait a second.  You said you sent that

 9    memo report to my chambers or where?

10          MR. BRADFORD:  Maybe Mr. Art or Mr. Manes can apprise

11    the Court of our efforts in that respect.

12          THE COURT:  How do I get a copy of it?

13          Mr. Manes, I think you just unmuted yourself so I

14    think you want to say something?

15          MR. MANES:  Yes, Your Honor.  I believe we had a

16    member of our team email it to scola@flsd.uscourts.gov.  We

17    could also file it on the public docket momentarily if that

18    would be easier.

19          THE COURT:  Let me see if I can find it.  One second.

20          MR. MANES:  It would be from Margaret Cunliffe,

21    C-U-N-L-I-F-F-E.

22          THE COURT:  There's a zip file with a million things

23    in it.  I assume it's the last thing that was in here.

24          MR. MANES:  Your Honor, that may actually be a

25    courtesy copy of the status report that we filed.  The email
```

1    from Ms. Cunliffe would have been at 4:36 p.m. or thereabouts

2    with only one PDF file attached.

3             THE COURT:  Okay.

4             MR. MANES:  Correction, 5:36 p.m.  I am on central

5    time.  My apologies.

6             THE COURT:  5:35, so you misled me.

7             MR. MANES:  Sorry, Your Honor, my email must be slow.

8             THE COURT:  This is the defendant's status update

9    regarding the Princeton post office.

10            Mr. Borson, I assume you have this?

11            MR. BORSON:  I wrote it, Your Honor.

12            THE COURT:  Okay.  So I guess there's two ways to read

13   this.  It says, of the 180,000 mail pieces in the Princeton

14   station, 47 ballots were found Friday, 10 Saturday, and 5

15   Sunday.  No additional ballots were found today.  All ballots

16   with one exception have been delivered.  And then they explain

17   that exception.

18            So one way to read that is we have gone through all

19   180,000 pieces and there are obviously no ballots left because

20   we looked today and there were none today.

21            Another way to look at it is there's 180,000 pieces

22   and this is what we found on these consecutive days and we are

23   still looking.

24            Can you just clarify, Mr. Borson?  It seems like an

25   easy thing.  If they have gone through everything and there are

1   no ballots there, it would be easy just to say there are no

2   more ballots.  And if they are still going through things, why

3   can't we say there's still some, so take all reasonable

4   feasible actions to make sure that all of the mail is checked

5   and to make sure that the ballots are delivered to the election

6   bureau by 7:00 p.m.?

7           MR. BORSON:  I'm not sure which one of those it is,

8   Your Honor.  I believe it's the first, but I can't confirm

9   that.  Obviously if it's the second, they will do all

10  reasonable measures to find the ballots and get them out.

11          THE COURT:  Why don't you then in the morning, when

12  you file your report about the retail facilities, file some

13  clarification saying either they have gone through 180,000

14  pieces and there are no more ballots, or they have gone -- or

15  they are still going through them and we are taking all these

16  extraordinary steps that were set forth in this memo and we are

17  still going to do it today, and that if there are any others

18  found, they will do everything they can to deliver them on

19  time?

20          MR. BORSON:  We will do that, Your Honor.

21          THE COURT:  Okay.  Anything else we can do this

22  evening?  Mr. Bradford?

23          MR. BRADFORD:  I think this has been very helpful,

24  Your Honor.  We appreciate it.  And we will be back at 9:30.  I

25  have a medical procedure in the morning.  If I am unable to

1    appear at that time, my colleagues will be here.  And I

2    apologize --

3         THE COURT:  Who is going to take the lead?  First of

4    all, it's at 10:30, not 9:30.

5         MR. BRADFORD:  Right.  I'm sorry.  I'm working on

6    central time, as is my colleague.  10:30 eastern time.  I

7    believe my colleague Mr. Manes and others here will be

8    available and participate, and I will make every effort to

9    participate.

10        THE COURT:  Okay.  Good luck with the medical

11   procedure, and we will see everyone at 10:30 tomorrow.  I will

12   get a short order out in the next couple of minutes about what

13   we just discussed here this evening.

14        THE COURTROOM DEPUTY:  Judge, this is Jacob.  Excuse

15   me for interrupting.

16        THE COURT:  No problem.

17        THE COURTROOM DEPUTY:  Can we ask Christian Molina

18   with regard to the Zoom meeting number for tomorrow?

19        Christian, are you there?

20        THE COURT INTERPRETER:  Yes, I am here.  We can reuse

21   this one if you want, or if not, I can create a new one for

22   tomorrow, whatever you prefer.

23        THE COURT:  We can use the same one.  That's fine.

24   The only difference with this one is this morning when I

25   clicked on it, I just opened up, and this afternoon I had to

```
 1   put in a password.  That's not that big of a deal.

 2           Did anyone else have a problem getting back on this

 3   afternoon?

 4           No?  Okay.  So let's use the same Zoom link in the

 5   morning at 10:30.

 6           MR. BRADFORD:  Not a problem.

 7           MR. BORSON:  Thank you again, Your Honor.

 8           THE COURT:  All right.  Thank you all.

 9           MR. BORSON:  Thank you, Your Honor.

10           (The hearing concluded at 5:50 p.m.)

11                          - - -

12                    C E R T I F I C A T E

13

14           I hereby certify that the foregoing is an

15   accurate transcription of the proceedings in the

16   above-entitled matter.

17           Please note: This hearing occurred during the

18   COVID-19 pandemic and is therefore subject to the technological

19   limitations of reporting remotely.

20

21   11/3/2020              s/ Tammy Nestor
                            Tammy Nestor, RMR, CRR
22                          Official Court Reporter
                            400 North Miami Avenue
23                          Miami, Florida 33128
                            tammy_nestor@flsd.uscourts
24

25
```